Grant Park Community Unit District No. 6, Plaintiff-Appellee, v. County Board of School Trustees of Kankakee County, Illinois, and Manteno Community Unit District No. 5, Defendants-Appellants.

Gen. No. 65–68.

Third District.

March 24, 1966.

Robert F. Reiser, of Manteno, and Edward Drolet, State's Attorney, of Kankakee, for appellants.

Eva L. Minor, of Kankakee, for appellee.

ALLOY, J.

The action from which this appeal comes to us originated in a suit brought by Grant Park Community Unit District No. 6 as an appeal under the Administrative Review Act from a decision of the County Board of School Trustees. The action was based upon the provisions of the 1953 School Code (1953 Ill Rev Stats, c 122, § 4B–13 and sections following). The County Board ordered an accounting between the plaintiff, Grant Park District and Manteno Community Unit District No. 5. The complaint was filed on June 1, 1956. In April of 1963 the Trial Court found the record incomplete and reversed and remanded the cause to the County Board of School Trustees for the purpose of supplying the answers to certain omissions in the record. A hearing followed on January 22, 1964, and the County Board in April of 1964 made additional findings of fact and again ordered an accounting as previously noted. Plaintiff again appealed to the Circuit Court and the Circuit Court found in favor of plaintiff and held that plaintiff was not required to account. Defendants County Board of School Trustees and the Manteno School District have jointly appealed the decision to this court.

While other facts appear from the record, the significant facts for our consideration involve organization of school districts and annexation of parts of an original school district to other districts. The Manteno Commu-

nity Unit District No. 5 was organized on December 2, 1950. On July 26, 1954, 12 sections of land from the Sumner School District No. 254 (of a total of 25 sections) were annexed to the Manteno Unit District. Thereafter, the Sumner District operated as a separate school district from July 26, 1954, to July 1, 1955, without the 12 sections which had been detached and annexed to the Manteno District. On January 18, 1955, a petition was filed for dissolution of the Sumner District and requesting that the territory be annexed to the Grant Park School District. The petition was granted and such annexation became effective at the end of the current school year on July 1, 1955, in accordance with section 4B–10 of chapter 122, 1953 Illinois Revised Statutes. The Grant Park District to which such annexation was had was at such time Grant Park Community Consolidated School District No. 261. On May 25, 1955, an election was held for the purpose of voting on the proposition of establishing Grant Park Community District No. 6 to include along with other territory, the Sumner District as it then existed (with the 13 sections remaining after detachment of the 12 sections to the Manteno District). The proposition carried and the consolidation became effective on July 1, 1955.

Thereafter, on July 5, 1955, the County Board of School Trustees of Kankakee County appointed an appraisal committee for a division of the assets of "former Sumner District No. 254." This appraisal committee reported on August 1, 1955, finding the value of the Sumner District assets and found that the percentage basis of Average Daily Attendance for pupils in the area attached to Manteno was 39% and the percentage basis for pupils attached to Grant Park was 61%. The distribution of assets as recommended by the appraisal committee was to be made as of July 1, 1954.

During the year that the Sumner District operated after detachment of the 12 sections, it levied taxes on the

201

territory within its boundary and functioned as a separate entity. The original order of the County Board of School Trustees entered on April 2, 1963, which was reversed and remanded in the Circuit Court, making certain specific findings, was supplemented by the County Board order of April 2, 1964. It found that Grant Park Grade School District No. 261 became a part of Grant Park Unit District No. 6 by inclusion therein at the time of the creation of such district; and that Grant Park Community Unit District No. 6 was formed by election on May 21, 1955. The County Board also ratified and confirmed previous findings of fact made in the original board resolution including an additional finding that part of the old Sumner district was annexed to Manteno and the remaining part was included within the boundaries of the newly created Grant Park Unit District at the time of its creation; that a simultaneous annexation of the respective parts of Sumner was planned by the Board; that Manteno forbore annexation of all or part of the Sumner District at its creation to enable Grant Park Unit District to have enough population to be organized on representations by responsible authorities that an accounting would follow; that appraisals and other proceedings followed thereafter and that the Board, therefore, ordered the appraisal report approved (which showed 39% of the total appraised value of $31,887.66 or $12,436.19 payable to the Treasurer of Manteno, with the remaining 61% to be retained by Grant Park).

The Circuit Court in ruling upon the appeal from the County Board order of April 6, 1964, concluded that section 4B–13 (1953 Illinois Revised Statutes, c 122, § 4B–13) has no application to the case and that Grant Park Community Unit District No. 6 was, therefore, entitled to all of the assets of Sumner District No. 254 including all moneys on hand.

Section 4B–13, to which reference is made, provides specifically "whenever a part of a district is included within the boundaries of a newly created district, the county board of school trustees shall cause an accounting to be had between the districts affected by the change in boundaries as provided in sections 4B–14 through 4B–24 of this Act, each inclusive." On appeal in this court, the appellants contend that the trial court erred in finding the statute referred to inapplicable and in interpreting the statutes and laws contrary to the public policy of the State of Illinois. It is specifically contended that the court erred in allowing an absurd result in statutory construction, the net result of which would mean that $12\frac{2}{25}$ths of the territory in Sumner District No. 254 and 39% of the school population would lose all the assets they contributed over the year and that by including $13\frac{3}{25}$ths of the territory and 61% of the population in the new district, the new district could, therefore, take all of the assets. It is argued that such conclusion is unsound and unreasonable and that if 24 out of the 25 sections had been annexed by Manteno, Manteno could theoretically have been saddled with the responsibility of educating students from 24 sections and if thereafter Grant Park Unit No. 6 had annexed the 1 remaining section with the buildings, it could have taken all of the assets.

Appellee in this court contends in effect that this is the result which would follow by a construction of the applicable statutes on the basis that there was no authority in law for the County Board of School Trustees to order an accounting between Manteno and Grant Park Unit No. 6 and that the applicable sections (Ill Rev Stats 1953, c 122, §§ 4B–13 through 4B–22) did not confer such authority on the Board because the situation here does not involve "a part of a district included within a newly created district." Appellee contends that the on-

ly statute applicable here is section 4B–10 referred to which provides that upon the close of the then current school year, during which any school district is annexed to another school district, the annexing district as it is constituted on and after the time of such annexation shall receive all the assets and assume all the obligations and liabilities of the district annexed. Appellee contends that if the Legislature fails to make provision for an equitable adjustment of assets and liabilities between the school districts affected by a change in territory, it is a hardship which the Legislature alone can remedy and the Courts cannot grant relief, citing People v. Bartlett, 304 Ill 283, 136 NE 654.

In Board of Education School Dist. No. 20 v. Board of Education School Dist. No. 315, 12 Ill App2d 97, 139 NE2d 173, the court concluded that there was no prohibition against an accounting in the interim between the effective dates of the County Board Act and the 1955 Amendment to which we have referred. The court pointed out that there was no provision in the School Code of Illinois which applied clearly and unmistakably in that case. The court then went on to state that the policy of the State of Illinois embodied in the various sections of the School Code was that the funds and assets of schools should follow the liabilities and responsibilities attendant upon providing for an education system. The court concluded in that case that when a common school district is detached from a consolidated unit district prior to the holding of any school or incurring of any bonded indebtedness, the funds of the common school district rightfully proceed with it on detachment and, that, after the detachment, the consolidated unit district has no right to the funds properly allocated to the common school district. The court stated that the detached territory having contributed to the unobligated fund existing at the time of the detachment,

is entitled to its benefit. The court further observed, at Pages 105 and 106:

"We are aware that Section 4B–13 of the School Code, as amended in 1955 . . . provides now, inter alia, that 'there shall be no accounting made after a mere change in boundaries when no new District is created.' That particular provision was added to Sec 4B–13 in 1955, however, and was not in the law at the time of the happening of the events concerned in the present case. The defendant contends that such is the present public policy of Illinois. Whatever Sec 4B–13 as so amended in 1955 may mean, and whatever the public policy of the State in this regard may be at the present time, it was not so expressed and provided by the Legislature at the times pertinent to the case at bar . . . in the instant case there was then no statutory provision contrary to the precedent of People v. Trustees of Schools . . . The Legislature met in 1953 after that case had been determined. It is presumed to have been familiar with that case. It had an opportunity then to change the law by statute, if it so desired, but it did not then do so. The material public policy of the State in any instance can only be ascertained from the acts, or failures to act, of the Legislature, as interpreted, construed, and applied by the courts, as of the times pertinent to a particular case, not as of some later date."

In the 1958 Illinois Law Forum, at page 349, the author observes in connection with accounting as to school districts:

"Since 1865 the school laws have provided for an accounting of funds and assets when a new district is created so as to include a part of another district, and only in that case. When provision was

205

made for such an accounting in the County Board of School Trustees Act as originally enacted, the language was somewhat ambiguous, but by amendment in 1955 it was made clear that the accounting was applicable only in the case of the creation of a new district.

"In Board of Education v. Board of Education . . . the Appellate Court . . . held that there was no prohibition against an accounting in the interim between the effective dates of the County Board Act and the 1955 amendment."

The author goes on to state that the same result might have been reached by applying the doctrine of Ketcham v. Board of Education School Dist. No. 201, 324 Ill 314, 155 NE 332, to section 4B–14 of the School Code. In the Ketcham case, the court observed (at Page 318):

"When the literal enforcement of a statute would result in great injustice and lead to absurd consequences, the courts are bound to presume that such consequences were not intended and to adopt a construction which, it is reasonable to assume, was contemplated by the legislature. When the legislative intention can be gathered from a consideration of all the legislation upon the subject, words of a particular section may be modified or altered so as to obviate all inconsistency with such intention."

■ ■ In examining the facts in the present case in the light of the decisions referred to and the apparent legislative intention, it is noted that on July 5, 1955, when the appraisers were appointed, section 4B–13 referred to was not in force and effect and did not become effective until July 9, 1955. While it is true that no new district was formed when part of Sumner District No. 254 was annexed to Manteno, a part was in fact annexed

206

consisting of 12 out of 25 sections and a part of the district remained and was operated until the creation of the Grant Park Unit District No. 6. At such time the remaining part became part of the Grant Park Unit District. As indicated in Board of Education School Dist. No. 20 v. Board of Education School Dist. No. 315, supra, the Legislature had made no provision preventing an equitable adjustment prior to the enactment of section 4B–13 herein referred to. Applying sections 4B–14 through 4B–22 of the chapter herein referred to and based upon the precedents of Board of Education School Dist. No. 20 v. Board of Education School Dist. No. 315, supra, and the Ketcham case herein referred to, we agree that the public policy of this State at the time of the appointment of the appraisers did not bar an accounting after a mere change in boundaries when no new district was created. On the basis of the precedents, an accounting could have been ordered between Sumner and Manteno at the time the 12 sections were annexed to Manteno. We find no legislative provision or precedent which prohibited a delay in the accounting until the end of the year. The County Board, it can be noted from the record, determined to delay the accounting until the end of the year for the welfare of the students in the remaining 13 sections so that 39% of the assets would not be taken away at such time. It thus sought to act prudently and ordered an accounting at the end of the school year. Nothing in the record shows that Grant Park or anyone else would be injured in any respect as a result of an accounting. We feel that Manteno should not be penalized because the accounting was delayed until the time when the remaining part of Sumner No. 254 became part of the newly created Grant Park District No. 6. It could not have been the policy of the Legislature to provide for an inequitable result and, on the basis of the cases of Board of Education School Dist. No. 20 v. Board of Education of School Dist.

No. 315, supra, and Ketcham v. Board of Education School Dist. No. 201, supra, we must conclude that the only equitable and appropriate determination is to approve the accounting ordered by the County Board of School Trustees. We are aware that no exact precedent may be cited for such conclusion and that a rigid and technical interpretation of the statutes might call for an affirmance in this case. We also are aware of deficiencies in the procedures of the County Board of School Trustees in its technical procedures and we are conscious of the fact that the County Board of School Trustees proceeded to allow the annexation to Manteno without any formal agreement or understanding as to division of funds. On the basis of the record and the findings of the Board, we feel that we are not required to reject the accounting undertaken by the Board. We are also aware of the policy of this State at the time in question and the need for equitable interpretation of the applicable statutes and precedents on the basis of the record before us. Our conclusions are necessarily applicable only to the facts and to be understood in light of the specific times involved as noted in this opinion.

We, therefore, conclude that the order of the Circuit Court should be reversed and this cause remanded with directions to affirm the order of the County Board of School Trustees entered on April 6, 1964.

Reversed and remanded with directions.

CORYN, P. J. and STOUDER, J., concur.