LOUIS J. WHITE *et al.*, Plaintiffs-Appellees, *v.* THE REGIONAL BOARD OF SCHOOL TRUSTEES OF CHAMPAIGN COUNTY *et al.*, Defendants.—(THE REGIONAL BOARD OF SCHOOL TRUSTEES OF CHAMPAIGN COUNTY *et al.*, Defendants-Appellants.)

Fourth District No. 15095

Opinion filed January 26, 1979.

CRAVEN, J., dissenting.

Thomas R. Miller Law Offices, P. C., of Monticello, Arnold F. Blockman, of Hatch, Nicol, Blockman & McPheters, and Thomas J. Difanis, State's Attorney, of Urbana (Joseph D. Pavia, Assistant State's Attorney, and Scott H. Rippe, law student, of counsel), for appellant.

Paul G. Foran and John Hirschfeld, both of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, of Champaign, for appellee.

Middleton & Craver, of Urbana, for *amicus curiae.*

Mr. JUSTICE MILLS delivered the opinion of the court:
School detachment.
Regional board denied.
Circuit court allowed.
We reverse.
This case concerns a petition to detach 30 sections of Sidney Township from Community Unit School District No. 7 and attach to Homer Community Consolidated School District No. 208. The regional board of school trustees of Champaign County denied the petition, but on administrative · review, the circuit court reversed and ordered the

detachment-annexation. The board, Unit 7, and the objectors to the petition appeal.

Following routine procedures, filings, and objections to the petition to detach, a public hearing was held before the regional board where considerable documentary and testimonial evidence was submitted. Thereafter, the board denied the petition and made a single finding of fact: "It is not to the best interests of the schools of the area nor the educational welfare of the pupils that would be served to grant the prayer of the petition."

Administrative review was sought and, pursuant to stipulation, the court remanded the cause to the Board for further findings of fact. Additional specific findings by the board were subsequently filed with the circuit court. Following a final hearing, the court found that the regional board had abused its discretion, that its findings were contrary to the manifest weight of the evidence, reversed the board, and ordered the detachment-annexation.

This appeal essentially rides upon the visceral issue of whether the trial court erred in ruling that an *accounting* between the school districts was permitted under section 7—15 of the School Code. Because if an accounting is not allowed by the statute, then we need not address the secondary issue of whether the decision of the board was against the manifest weight of the evidence. This is so since the rejection of the detachment by the board was—in large measure—premised on its determination that no accounting of the funds and assets involved could occur under the law.

The circuit court ruled the other way. Let us see which was right.

Whether or not an accounting would be authorized as to the proposed boundary changes hinges on construction of section 7—15 which provides:

> "Whenever a part of a district is included within the boundaries of a newly created district the county board of school trustees shall cause an accounting to be had between the districts affected by the change in boundaries as provided in Sections 7—16 to 7—26 of this Act, each inclusive; *however, there shall be no accounting made after a mere change in boundaries when no new district is created.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 122, par. 7—15.

All parties agree that no new school district was created or contemplated by the proceedings involved here. The trial court found that the language "mere change in boundaries" meant an "insignificant" change in boundaries and, concluding that the change here proposed as a "significant" as opposed to an "insignificant" change, ruled that section did not preclude an accounting here. Objectors contend that the language

of the statute is clear and unambiguous and that no construction thereof is necessary, asserting that the provision plainly prohibits accountings in cases where no new district is created. The regional board likewise contends that the plain language of section 7—15 prohibits an accounting as to the proposed boundary changes here, pointing to the plain meaning of the word "mere," the legislative history, court decisions, and language of other related provisions of the School Code.

Plaintiffs, on the other hand, maintain that the language of the provision is ambiguous and when the terms are given their plain meaning in accordance with reaching just and equitable, rather than unjust and absurd, results, interpretation of section 7—15 permits an accounting. Furthermore, they urge that the prohibition of an accounting here would be contrary to the expressed underlying intent of the legislature in providing for changes in school district boundaries.

Let us analyze the merits of these diametric positions.

It is clear that if the language of section 7—15 is plain on its face, and there is no ambiguity, no construction thereof is needed. And we are fully aware of the fact that this court is required to apply that language as reflective of the legislature's intent even if the results appear harsh.

Each party requests us to give the word "mere", as contained in the phrase, its plain and ordinary meaning. Each asserts that the result would be consistent with its position. Defendants suggest that the word "only" be substituted for "mere" in section 7—15 while plaintiffs argue that "only" means "simply" and that the latter should be substituted for the word "mere."

Taking defendants' suggestion, the phrase becomes:

> "[H]owever, there shall be no accounting made after *only* a change in boundaries when no new district is created."

Under plaintiffs' argument, the phrase would read:

> "[H]owever, there shall be no accounting made after *simply* a change in boundaries when no new district is created."

But, in our view, neither change indicates (as plaintiffs contend and the trial judge ruled) that "mere" was meant to imply "insignificant." Both proffered changes support defendants' argument.

The predecessor to present section 7—15 was section 4B—13 of the School Code (Ill. Rev. Stat. 1953, ch. 122, par. 4B—13) which provided:

> "Whenever a part of a district is included within the boundaries of a newly created district the county board of school trustees shall cause an accounting to be had between the districts affected by the change in boundaries as provided in Sections 4B—14 to 4B—24, of this Act, each inclusive."

Noteworthy is the fact that such section did *not* contain a phrase similar to

the phrase in dispute here. The new phrase of reservation was added by amendment to the Code in 1955 (Ill. Ann. Stat., ch. 122, par. 7—15, Historical Note, at 267 (Smith-Hurd 1962)).

The substance of the predecessors to section 4B—13 of the School Code (Ill. Rev. Stat. 1953, ch. 122, par. 4B—13), was substantially the same as that we have quoted. In *Grant Park Community Unit District No. 6 v. County Board of School Trustees* (1966), 68 Ill. App. 2d 199, 215 N.E.2d 307, the court was asked to review a decision ordering an accounting where no creation of a new district was involved. The action was based on section 4B—13 of the School Code as in existence prior to the 1955 amendment. The court concluded that neither the statute, as it stood prior to the 1955 amendment, nor the public policy of the State, barred "an accounting after a mere change in boundaries when no new district was created." (68 Ill. App. 2d 199, 207, 215 N.E.2d 307, 311.) In dictum, the court quoted favorably from 1958 U. Ill. L.F. 327, 349, that the 1955 amendment " 'made clear that the accounting was applicable only in the case of the creation of a new district.' " 68 Ill. App. 2d 199, 206, 215 N.E.2d 307, 311.

Cases decided prior to 1955 (although not ruling specifically on section 4B—13 or its predecessors) indicated that, as the law then stood, even where new districts had not been created, some means of reapportioning funds and assets among the districts involved was sanctioned. (See *People ex rel. Board of Education v. Trustees of Schools* (1952), 347 Ill. App. 330, 106 N.E.2d 892; *Ketcham v. Board of Education* (1927), 324 Ill. 314, 155 N.E. 332.) Impliedly from this analysis, section 4B—13, prior to its 1955 amendment, did not require creation of a new district as a condition precedent to the granting of an accounting.

Since the 1955 amendment, we are aware of no court of review of this State that has ruled whether the language of the disputed phrase here restricts accountings to only those instances where a new district has been created. The Regional Board argues that an amendment to a statute must be presumed to effectuate a change in existing law and that, in light of the apparent status of the law as to accountings prior to the 1955 amendment (*i.e.,* not prohibiting accountings even where no new district was created), the amendatory language before us must be presumed to prohibit accountings unless a new district has been created. This argument has merit.

But plaintiffs counter by citing decisional language recognizing that where absurd or unjust consequences result from an interpretation of a statute, courts are bound to presume that such consequences (or interpretation) were not intended by the legislature.

Plaintiffs recognize that the primary concern in the School Code's permitting changes in boundaries of school districts is the educational

welfare of the students involved and argue that, should accountings not be permitted except in the cases of creation of new districts, decisions on change of district boundaries will hinge on that lone economic factor of accounting, rather than on the full panoply of factors which comprise the educational welfare of the involved students. As plaintiffs astutely observe, "the greater the number of students involved * * * the greater the expense that would be incurred by the annexing district and the greater likelihood that it will not be able to handle that expense."

Section 7—6 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 7—6) requires consideration of "the best interests of the schools of the area and the educational welfare of the pupils" in deciding whether to change school district boundaries. One subconsideration within this framework certainly is the resulting financial and economic situation of the districts involved (in which an accounting would be extremely material). Caselaw has recognized the policy of this State as embodied in the School Code that:

> "[T]he funds and assets of schools should follow the liabilities and responsibilities attendant upon providing for an education system." (*Grant Park Community Unit District No. 6 v. County Board of School Trustees* (1966), 68 Ill. App. 2d 199, 204, 215 N.E.2d 307, 310. See also *People ex rel. Board of Education v. Trustees of Schools.*

But other subconsiderations are also involved, including the likelihood of parent and child participation in school activities, the identity of the petitioning territory to the district to which annexation is sought, and the distance between residents' homes and schools.

An absurd result can, indeed, be imagined should 90% of a given district be detached and annexed to another and no accounting under section 7—15 be permitted. Assuming the facilities in the annexing district are superior, the schools in that district are closer in distance to the individuals involved, and parent and student participation in school activities will blossom, those aspects of the "educational welfare of the students involved" would clearly support a change in boundaries. However, if an accounting were not permitted, it is highly unlikely that the annexing district could carry out its educational responsibilities from a financial standpoint. (This—unquestionably—was a cardinal consideration of the Regional Board below in denying the petition to detach since 30 sections of land, representing nearly 20% of Unit 7's assessed valuation, were involved.)

We conclude that the disputed language here—"however, there shall be no accounting made after a mere change in boundaries when no new district is created"—is unambiguous. The phrase simply and clearly states that in a situation in which no new district is created—but district

boundaries are changed—an accounting is not authorized. The phrase, not being interrupted by punctuation, must be read as a whole, describing one, rather than more than one, circumstance. Furthermore, our interpretation of the pertinent legislative history of this section confirms the absence of ambiguity and the clear meaning of the provision. It precludes accountings or the balancing of assets in all cases where no new district is created. It's as simple as that.

Now, where does this leave us? The Board made its determination to deny the petition upon its understanding that an accounting was not permitted by the statute. In this posture it was correct. The trial court—in its administrative review order—found that the educational welfare of the students in both school districts would be best served by granting the petition and then held:

> "11. That all of the above findings are predicated upon this Court's finding that, in the event of detachment, an accounting of funds and assets as provided in Ch. 122 of the Illinois Revised Statutes §§ 7—15, et seq., may occur in this case between the school districts involved, and that without said accounting, as provided in said statutes, that the subject detachment and annexation would not be in the best interests of the children and school districts involved herein."

Thus, since we hold that accounting is not permitted, and since the trial court's allowance of the detachment was conditioned upon such accounting, and since the trial court found that *sans* accounting the detachment would not be in the best interests of the children and school districts involved, it stands to reason that the decision of the Regional Board was correct and should be reinstated.

*Ergo,* the order of the circuit court is reversed and the decision of the Regional Board is reinstated.

Reversed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

I dissent. The evidence reveals that the detachment-annexation of the subject property was correct. In reaching this result, I note that it was not necessary for the Board or for the trial court to consider the question of an accounting since an accounting is only necessary *after* detachment-annexation has been ordered, and not before.

Section 7—6 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 7—6) sets forth the criteria for the Board to consider in determining the boundary changes of school districts. That section provides that the

Board "shall take into consideration the division of funds and assets which will result from the change of boundaries." It is evident from this section that a comprehensive accounting as set forth in section 7—15 of the School Code is not envisioned prior to the Board's determination of detachment-annexation.

In fact, section 7—15 of the School Code speaks specifically to an accounting *after* the boundaries of school districts are changed. Thus, the trial court and the Board incorrectly conditioned the detachment-annexation of the subject property upon an accounting between the respective school districts.

Accordingly, I would affirm the trial court's order for detachment-annexation. That portion of the order that purports to require or condition the detachment-annexation on an accounting is premature, and indeed not authorized in this, an administrative review proceeding.