Logan Burnidge, et al., Plaintiffs-Appellees, v. County Board of School Trustees of Kane County, Illinois, and Community Unit School District No. 301, Kane and DeKalb Counties, Illinois, Appellant.

Gen. No. 11,345.

Second District, First Division.

May 16, 1960.

■■■■■■■■

Benson and Mair, of Batavia, for appellant.

Dan B. Withers, Jr., of Elgin, for appellee.

SPIVEY, J.

This is an appeal from an order of the Circuit Court of Kane County reversing an order of the County Board of School Trustees of Kane County, hereafter called the "Board." Plaintiffs, land owners in Community Unit School District No. 301, Kane and DeKalb Counties, petitioned to detach 110 acres from Community Unit School District No. 301, Kane and DeKalb Counties, Illinois, hereafter called "Plato District." Plaintiffs asked that the land be annexed to Elgin District No. 46, hereafter called "Elgin District." Three hearings were held and on three occasions the Board denied the petition to detach. On complaint

for administrative review after each of the first two hearings, the Circuit Court of Kane County remanded the cause for further evidence before the Board. After the Board's third order, the Circuit Court reversed the Board for the reason that the Board's order was not supported by substantial evidence, and for the further reason that the order was contrary to the manifest weight of the evidence. The petition to detach the territory from Plato District was allowed and the territory was annexed to the Elgin District.

Plato District has appealed from the order of the Circuit Court of Kane County.

At the time this petition was filed, the plaintiff land owners lived in the Elgin District and no one lived on the land sought to be detached from the Plato District, and annexed to the Elgin District. It is fair to say that the land was sought to be subdivided and developed and this desire prompted the petition to detach.

When the first hearing was held, the Secretary of the County Board of School Trustees submitted his report as required of him by statute (Ill. Rev. Stat., 1955, Chapter 122, Sec. 4B-4). The Secretary reported that the proposed changes would affect the districts, "Very little at present, depending on housing development," and as amended the requested changes in the petition would not change the compact and contiguous character of the districts.

Petitioners, on behalf of the petition testified that they lived in the Elgin District adjoining the area contained in the petition. They related that it was three miles to the Elgin schools, but ten or eleven miles to the Plato High School and three or four miles to the Udina School. It was said that the children were taken to the schools at night for various activities and it would be much easier for the families to come into Elgin and the children to go to school

505

there. Petitioners testified that the granting of the petition would be of benefit to the people buying the land.

At the first hearing, no evidence was offered in opposition to the petition but the petition was denied "in order to maintain a regular school district boundary and because no children are actually living in areas wishing to be detached." On administrative review, the Circuit Court remanded the cause for the taking of additional evidence.

When the matter was presented to the Board for a second hearing, a witness who then lived in the territory testified that his children were in school in the Elgin District; that he wanted the children to stay in that district and that it was closer to the Elgin schools. Evidence was offered to show that the students bus travel time would be greatly reduced if they were allowed to attend school in the Elgin District. A witness testified that the area sought to be detached has always been identified with the community of Elgin and that it would be much easier to attend school affairs in the Elgin District. A real estate broker testified the lots in the territory would appreciate $500 in value if the land was in the Elgin District. He further testified he had at least five prospective customers lose all interest in a lot when they learned the property was in the Plato District.

Again no evidence was offered in opposition to the petition and again the Board denied the petition. The Board found that substantially equal educational facilities were provided by both districts but that the distance to Plato District was greater although adequate transportation was provided. The Board also found that the value of the property would appreciate if attached to the Elgin District, and that no important effect would be realized by either district if the change were made.

On administrative review for a second time the court remanded the cause to the Board for further evidence and a third hearing was held. Again the testimony showed that the Elgin District was closer than the Plato District and that school age children were now residing in the territory. One parent testified that if his three children were required to attend the Plato District the next year, each of them would be attending a different school although the oldest of the three was but ten years old. Another parent testified that if his son were required to attend the Plato District and participated in sports as he did in the Elgin District, the father would have to drive eleven miles nightly as compared to three miles in the Elgin District. This he stated would prevent his son from participating in extra curricular sports at the Plato District.

The secretary of the Board testified that essentially, the educational facilities were equal in the two districts but he stated that the Elgin District offered a Community College program, whereas no such program was offered by the Plato District. The superintendent of the Plato District testified that his district offered courses in agriculture, whereas no such course was offered in the Elgin District. The board again denied the petition.

Reviewing the evidence carefully, the evidence shows that the educational facilities of the districts are essentially equal. The testimony clearly showed a natural identification of the territory with the Elgin District, a physical closeness of the territory to the Elgin District, a preference by the owners and residents of the territory to the Elgin District, an actual appreciation in land value in the territory if attached to the Elgin District, and a convenience to the parents and children living in the territory if the children are allowed to continue to attend the Elgin District. If

these factors are entitled to consideration it is abundantly clear that the Board's order was contrary to the manifest weight of the evidence and the Circuit Court of Kane County properly reversed the order of the Board and allowed the prayer of the petition.

■ This court may not weigh the evidence in this proceeding for administrative review. However, we may review the record to determine if the decision of the board is supported by any evidence, or is contrary to the manifest weight of the evidence. Pearson v. Board of Education, Community Unit School Dist. No. 5, Macoupin County, 12 Ill.App.2d 44, 138 N.E.2d 326; Community Unit School Dist. No. 1 v. County Board of School Trustees of Woodford County, 11 Ill.App. 2d 579, 137 N.E.2d 877.

■ It is clear that the factors mentioned above should have been considered by the Board.

In School Dist. No. 79 v. County Board of School Trustees of Lake County, 4 Ill.2d 533, 123 N.E.2d 475, the Supreme Court in discussing section 4B–4 of the School Code [Ill Rev Stats 1959, c 122, § 4B–4] said, "Section 4B–4 gives to a county board of school trustees a standard under which their discretion may be properly exercised. The section clearly specifies the type of evidence that should be heard and considered at the hearing on the petition and prescribes that the board shall take into consideration the division of the funds and assets which will result from the change in boundaries, the school needs, and the condition of the territory affected, and the ability of the district to meet the standards of recognition as prescribed by the Superintendent of Public Instruction."

Both the majority and the dissenting opinion in Oakdale Community Consol. School Dist. No. 1 v. County Board of School of Randolph County, 12 Ill.2d 190, 145 N.E.2d 736, recognize that preference of the residents of the territory may be considered, but such

508

preference alone is not controlling. The Supreme Court in that case said, "Although the residents of territories within the district may initiate a petition for detachment because of personal desires or convenience, much more is needed to support the board's decision to change established boundaries. The welfare of the affected districts and their pupils as a whole must control rather than the wishes of a few, and such petitions granted only where the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole."

So far as any benefit or detriment to either district is concerned the record shows that neither district will be affected in any substantial measure. Thus, the determination should be made to turn solely upon the welfare of the pupils. It is clear from the record that none of the pupils of either district excluding the students who live in the territory petitioning, will be affected by the granting or denial of the petition. But on the other hand, the evidence clearly shows that the welfare of the students living in the territory sought to be changed will clearly be affected.

Assuming that the educational opportunities in the district are equal, we cannot overlook the obvious advantage to a child of attending a school in close physical proximity to the child's home. In addition to the savings in transportation costs, and diminution in time spent daily by children riding a bus, there would be a certain safety factor by reason of diminution of exposure and certainly a lessening of fatigue accompanying a long bus ride to and from school.

But even as much or more than these considerations, is the fact that an identification with a school district in a child's natural community center will inevitably result in increased participation in school activities by the child and his parents. Such increased

509

participation cannot but result in an improvement in the educational picture of the entire area. By the same token, an unnatural identification with a school district would have an opposite result with a corresponding loss of participation and resulting poorer educational picture. In recognition of these facts the legislature made provision for proceedings to change the boundaries of existing districts.

Not only would the community suffer from an educational standpoint, but the action of the board would result in a depreciation of value of the territory in question. This fact has a direct impact on the educational welfare of the community for it is upon the basis of the value of property that funds are made available for school purposes. The territory consists of 110 acres sought to be divided into lots of from one-half to three-fourths of an acre each. It was estimated that there would be an increase of $500 for each lot if the property was annexed to the Elgin District. This fact alone would result in a substantial increased assessed valuation available for taxation for school purposes. Thus, it can be seen that while no detriment can be shown to anyone by allowance of the petition, in addition to the factors already discussed, there would be a revenue benefit if the property is annexed to the Elgin District. Then too, the fact of the appreciation in value is persuasive as demonstrating the soundness of the contention that this territory is naturally and properly a part of the Elgin District for educational purposes.

The Board's only evidence tended to establish an equality of educational facilities. This evidence standing alone would not be reason to deny the petition to detach, for such a finding should be a condition precedent to the granting of a petition to detach. The Board would be remiss in its duty if a

petition were allowed to detach territory from a district where educational facilities were superior, and annex the territory to a district of unequal and inferior facilities. Such action would not be in the best interests of the educational welfare of the children involved. If substantial detriment were to result from the allowance of the petition, then education facilities would not remain essentially equal. It would seem to us an anomaly to say that proof of approximately equal educational facilities alone, was a sufficient showing to deny a petition to detach territory from a school district.

In Community Unit School Dist. No. 1 v. County Board of School Trustees of Woodford County, 11 Ill.App.2d 579, 137 N.E.2d 877, we pointed out that physical proximity of the school to the territory and a natural and historical identification of the territory to a certain school district were educational factors which were properly to be considered in such a proceeding as this. There, however, no children lived in the territory and no evidence was offered as to the educational welfare of any pupils who might later reside in the area. For this reason, we said that personal desires and convenience of *landowners and taxpayers standing alone,* was insufficient to warrant a change in established school district boundaries.

We also said, "Parents are definitely interested in the schools their children attend. All their ties and interests may be centered in a certain community and their convenience and their personal desires, as well as the personal desires of the landowner, should be given due consideration by the county boards of school trustees in determining whether the prayer of a petition to detach should be granted or denied. All things being equal, the landowner, the taxes from whose property enables the school of the district to operate,

the parents and students residing in the district, should be permitted to choose the school the pupils should attend."

The Board in this case has clearly ignored the manifest weight of the evidence adduced at the hearings and its decision is not supported by substantial evidence. For these reasons the judgment of the Circuit Court of Kane County reversing the order of the County Board of School Trustees of Kane County is affirmed.

Judgment affirmed.

McNEAL, P. J. and DOVE, J., concur.