39 Ill. App.2d 339 (1963)
188 N.E.2d 886
Virginia Community Unit School District No. 64 of Cass and Morgan Counties, Illinois, et al., Plaintiffs-Appellants,
v.
County Board of School Trustees of Cass County, Illinois, et al., Defendants-Appellees.
Gen. No. 10,432.
Illinois Appellate Court  Third District.
February 26, 1963.
Rehearing denied April 2, 1963.
*340 C.G. Colburn, of Virginia, for appellants.
Richard H. Mills, State's Attorney of Cass County, and Epler C. Mills, of Virginia, for appellees.
CARROLL, J.
The County Board of School Trustees of Cass County entered an order detaching a certain tract of land from Virginia Community Unit School District No. 64 of Cass and Morgan Counties and annexing the same to Ashland Community Unit School District No. 212 of Menard, Morgan, Sangamon and Cass Counties. In an administrative review proceeding brought by the Virginia District and its Board of Education, the *341 Circuit Court of Cass County affirmed the action of the Board of Trustees and plaintiffs have appealed. Their contention is that the decision of the County Board was against the manifest weight of the evidence and, therefore, the trial court's order affirming the same should be reversed.
The record discloses that the area described in the detachment petition contains 20 acres and is part of a 335-acre farm. Petitioners, John and Linda Devlin, husband and wife, are the only voters in the area. They have three small children all of whom were under school age at the time of the hearing. Between 145 and 148 acres of the farm are in the Virginia District and the remainder lies in the Ashland District. According to the report of the financial and educational conditions of the two districts made to the Board of Trustees by the Cass County Superintendent of Schools the change sought by the petition, "would not materially affect the educational program of either district as no pupil is currently involved and the assessed valuation of the territory involved would not materially affect the tax revenue for either district." It further appears from said report that it was the opinion of the County Superintendent that the educational facilities of the Ashland and Virginia Districts are equal.
John Devlin, one of the petitioners, testified at the hearing that his home is 5 miles from the Ashland School and 13 miles from the Virginia School; that the Ashland bus route passes his front gate while the distance to the route traveled by the Virginia bus is 1.8 miles; that the Devlin family does its trading and shopping and attends church in Ashland; that he is engaged in farming and delivers most of his grain to Ashland; that his dwelling and farm buildings are on the 20-acre tract; that detachment as prayed would leave no disconnected area; that the associates and *342 playmates of his children are all in the Ashland District and either do or will attend the Ashland school; that his oldest child would be eligible for kindergarten in the fall following the hearing and if enrolled in the Ashland school, the problem of transportation for the half day sessions involved would be removed as either he or his wife go to Ashland every day. Linda Devlin also testified reciting substantially the same facts as those given by her husband.
Charles F. Aggert, a member of the Ashland Board testified that if a Virginia school bus were to transport the Devlin children it would be required to travel the Ashland bus route in going to and from the Devlin home; that in so doing it would traverse a gravel road used by the Ashland bus and the resulting additional traffic would be detrimental to the road.
Aside from the foregoing practically all of the evidence before the Board related to the facilities and educational programs of the 2 districts and other noncontroversial matters. The evidence introduced in opposition to the petition tended only to demonstrate an equality of educational facilities between the two districts.
[1, 2] The power to change the boundaries of school districts by detaching territories from one district and annexing the same to another is vested in the County Board of School Trustees. (Ill Rev Stats 1959, c 122, §§ 4B-1, 4B-3.) Paragraph 4B-4 of the foregoing statute provides in part as follows:
"... The county board of school trustees shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, and shall take into consideration the division of funds and assets which will result from *343 the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted, ..."
In the instant case, the County Board of School Trustees at the conclusion of the hearing unanimously decided that granting the change in boundaries sought by the petition would be to the best interests of the schools involved and the educational welfare of the pupils thereof. Upon administrative review the court is confined to determining whether such a decision is against the manifest weight of the evidence. As was said in School Directors of Dist. No. 82 v. Wolever, 26 Ill.2d 264, 186 NE2d 281, "... The judiciary is ill equipped to act as a super school board in assaying the complex factors involved in determining the best interest of the schools and the pupils affected by a change in boundaries. Nevertheless, we must determine if the standards prescribed by the legislature are complied with."
[3] In contending that the Board departed from the standards prescribed by the legislature, and that its decision is contrary to the manifest weight of the evidence the plaintiffs rely principally upon Oakdale School District v. Trustees, 12 Ill.2d 190, 145 NE2d 736. Our attention is also called to a number of Appellate Court decisions where the question as to whether the evidence before the Board was sufficient to warrant the granting of a petition to change district boundary lines was considered. While these cases are authority for the proposition that the personal desires and conveniences of a few petitioners will not alone justify a boundary change to the detriment of others, we do not feel they are applicable to the factual situation which the instant record presents. In the Oakdale case the evidence established that there was no substantial *344 difference in educational facilities between the 2 districts involved but that the detachment sought would create a serious depletion of the tax resources of one district and an over-crowding of the other. In view of such showing, the Court concluded that the result of the detachment would be a detriment rather than an improvement in the educational picture of the entire area involved. A similar opinion has been expressed by our Appellate Courts in numerous decisions. However, in none of these cases do we find the Court indicating that equality of educational facilities alone affords a sufficient basis for denying a petition to detach, nor do we find any statement therein to the effect that proof of personal conveniences to the petitioners must be excluded from the consideration of the Board. Indeed it would be difficult to conceive of a situation where the personal desires and conveniences of the petitioners would not to some degree prompt the decision to initiate a detachment proceeding. The Courts have not held that the expression by petitioners of a personal desire to have territory detached condemns their petition to failure, but have merely said that such factor standing alone is not sufficient to change the established boundaries of a school district.
[4] Here the Board heard evidence that there is no difference in the educational facilities of the two districts; that the detachment sought would not affect the ability of the Virginia School to meet the standards of recognition prescribed by the superintendent of public instruction; that the tax revenue of neither district would be materially affected; that the distance from petitioners' home to Ashland is much less than it is to Virginia; that there is a well established identity of the territory involved with the Ashland district. These educational factors including the desire and convenience to the petitioners were all entitled to *345 be considered by the Board in determining whether allowance of the petition would tend to promote the best interests of the schools of the area affected and the educational welfare of the pupils residing therein. This we think represents much more than mere proof of petitioners' personal desires. Burnidge v. County Board of School Trustees of Kane County, 25 Ill. App.2d 503, 167 NE2d 21.
[5] Upon careful examination of this record, we are satisfied it shows the decision of the County Board of School Trustees to be supported by substantial evidence and accordingly the judgment of the circuit court is affirmed.
Affirmed.
REYNOLDS, P.J. and ROETH, J., concur.