Lawrence W. Wheeler, et al., Plaintiffs-Appellees, v. County Board of School Trustees of Whiteside County, Illinois, Jordan Community Consolidated School District No. 143, Lee and Whiteside Counties, Illinois, and Sterling Elementary School District No. 134, Whiteside County, Illinois, Defendants-Appellants.

Gen. No. 65–17.

Third District.

October 1, 1965.

L. Willard Nelson and Lester S. Weinstein, both of Morrison, for appellants.

Besse, Besse, Frye & Arnold, of Sterling, for appellees.

ALLOY, P. J.

The action in the cause before us was instituted by a petition for detachment of a 100 acre tract of land from a school district known as the "Jordan School District" and for annexation to the Sterling Elementary School District. The County Board of School Trustees of Whiteside County denied the petition for

detachment. Upon review by the Circuit Court of Whiteside County the decision was reversed.

Defendants on appeal seek a reversal of the decision of the Circuit Court of Whiteside County, and, in essence, assert that the County Board of School Trustees had acted within the limits of their discretion and that their conclusion was not contrary to the manifest weight of the evidence. Appellees, however, contend that the evidence presented to the Board clearly showed the educational advantages which would accrue to the students involved in the petition and that these advantages included transportation as well as numerous educational advantages. Plaintiffs basically contend that the decision of the County Board was clearly contrary to the manifest weight of the evidence and that it was the duty of the Circuit Court to reverse that decision.

It appears from the record that Plaintiffs followed the required procedure in seeking detachment from the Jordan School District and annexation to the Sterling Elementary School District. Upon hearing, it was disclosed that the Jordan School District had an assessed valuation of approximately $5,457,470 with a bonded indebtedness of $94,000. The average daily attendance of students at the school was 153 and the school consisted of a six-room rural consolidation having one all-purpose room and transportation. The district has seven full-time teachers. The Sterling Elementary District had an assessed valuation of approximately $68,277,478 with a bonded indebtedness of $2,040,000. The average daily attendance in the Sterling District consisted of 3,267 students served by 133 teachers and said district also has transportation available for students.

The land involved in the petition has an assessed valuation of approximately $145,000. It is composed of a wooded area known as Hickory Hills and at the

470

time of the hearing and decision, four students (who did not attend the Jordan District School) from one family would have been affected by the proposed change from one school district to the other.

From the evidence presented it also appears that the distance required to be traveled from the area sought to be detached and annexed, is approximately 3½ miles further to the school in the Jordan School District than to the school in the Sterling Elementary School District. Bus service is not now furnished to the area by the Jordan School District for the reason that the four children from one family in the area actually attend the Sterling Elementary School District and pay tuition for such purpose. There was also evidence to the effect that families with children did not wish to move into the area in question because their children would be required to attend the Jordan School District rather than a Sterling School with resulting inconvenience to the parents of the children who are engaged in extra-curricular school activities. Among educational advantages of the Sterling School District was evidence to the effect that it offered courses in home economics, manual arts, specially trained instructors, graded systems within grades, special home tutoring, the EMH program, special rooms for partially retarded and gifted children, the availability of a psychologist, a full-time social worker, and departmentalization in the 7th and 8th grades.

There was nothing in the record to show that the Jordan School District was levying its maximum tax rate. The attorneys for Jordan concede that it was not levying its maximum rate but implied that there was no burden upon the Jordan School District to present evidence of that fact and that the failure of the petitioner to point out that the maximum tax rate was not being levied somehow precludes any reliance on the fact that such tax rate was not in fact

471

being levied. We suggest, on the contrary, that in the event a maximum tax rate is being levied or if there is any jeopardy to a school district, that district should make such facts part of the record for guidance of school boards and the courts.

As was also indicated in the course of this opinion, the Jordan School is 7½ miles from Hickory Hills area in a direction opposite from that normally used by the residents of Hickory Hills which is a part of the Sterling Community while the Sterling elementary schools were located four miles from Hickory Hills in a direction customarily traveled by the residents.

It is pointed out by Plaintiffs that the County Board of School Trustees are required to determine whether a change of boundaries is to the best interest of the schools in the area and the educational welfare of the pupils, and that such determination must be supported by substantial evidence, otherwise it is the duty of the court to set aside such findings (Ill Rev Stats 1963, c 122, § 7–6; Albrecht v. Newcomer, 53 Ill App2d 24, 202 NE2d 353; Welch v. County Board of School Trustees, 22 Ill App2d 231, 160 NE2d 505). Plaintiffs assert that the Legislature has commanded the County Boards to determine whether a change of boundaries is in the best interest of the schools in the area and the educational welfare of the pupils involved. As stated in Welch v. County Board of School Trustees of Peoria County, 22 Ill App2d 231, 160 NE2d 505, where the County Board had denied a detachment, the findings of such administrative agency must be based on facts established by evidence which is introduced as such and not by reliance of the administrative agency on its own information to support its findings. The court further stated that the findings of the administrative agency must be supported by substantial evidence, and if found to be without substantial founda-

tion in the evidence, it is the duty of the court to set such finding aside.

It is correctly asserted by Plaintiffs that there are many parallel facts in the case before us with those with which the court was concerned in Albrecht v. Newcomer, 53 Ill App2d 24, 202 NE2d 353. In the instant case, the evidence disclosed that the business and social contacts of the Plaintiffs were all in the City of Sterling, that the distance from the Hickory Hills area to the Jordan School was 7½ miles, while the distance to the Sterling Elementary Schools was approximately 4 miles in a direction normally traveled. There was also evidence of certain educational advantages available in Sterling Elementary School District which were not available in the Jordan District. It is likewise apparent that there would be no jeopardy to the Jordan School District resulting from the detachment since it was not levying its maximum rate. The only evidence concerning educational welfare of the children in the case before us indicated that the welfare of the students would be best served by detachment and annexation to the Sterling School District. There was also the circumstance, to which we have previously referred, that there will be no actual shifting of students involved or even contemplated by reason of the fact that the only school age children presently concerned are attending the Sterling Elementary School District and are paying tuition.

The fact that the annexation and detachment of the territory might incidentally accommodate the convenience and personal preferences of some people, is not a basis for denial of the prayer of the petition where the only evidence concerning educational welfare of the children indicates that the welfare of the students would be best served by detachment and an-

473

nexation as requested. As indicated in Burnidge v. County Board of School Trustees, of Kane County, 25 Ill App2d 503, 167 NE2d 21 where the Circuit Court reversed the order of the County Board of School Trustees which denied a petition to detach, no one actually lived on the land sought to be detached at the time the petition was filed but it was certain that the land would be subdivided and developed and this desire promoted the petition to detach. In that case the proposed change would have affected the districts very little at the time of the petition and was dependent upon development. In that case, as is true in the instant case, at the hearing no evidence was offered in opposition to the petition, but the petition was denied in order to maintain a regular school district boundary and because no children were actually living in the area seeking to be detached. The court in that case stated at Page 507:

"Reviewing the evidence carefully, the evidence shows that the educational facilities of the Districts are essentially equal. The testimony clearly showed a natural identification of the territory with the Elgin District, a physical closeness of the territory to the Elgin District, a preference by the owners and residents of the territory to the Elgin District, and actual appreciation in land value in the territory if attached to the Elgin District, and a convenience to the parents and children living in the territory if the children are allowed to continue to attend the Elgin District. If these factors are entitled to consideration, it is abundantly clear that the Board's order was contrary to the manifest weight of the evidence and the Circuit Court of Kane County properly reversed the order of the Board and allowed the prayer of the petition."

474

And again at Page 509 the Court stated:

"Assuming that the educational opportunities in the District are equal, we cannot overlook the obvious advantage to a child of attending a school in close physical proximity to the child's home. In addition to the savings in transportation costs, and diminution in time spent daily by children riding a bus, there would be a certain safety factor by reason of the diminution of exposure and certainly a lessening of fatigue accompanying a long bus ride to and from school.

"But even as much or more than these considerations, is the fact that an identification with a School District in a child's natural community center will inevitably result in increased participation in school activities by the child and his parents. Such increased participation cannot but result in an improvement in the educational picture of the entire area. By the same token, an unnatural identification with a school district would have an opposite result with a corresponding loss of participation and resulting poorer educational picture. In recognition of these facts, the legislature made provision for proceedings to change the boundaries of existing districts."

And again at Page 511, the Court stated:

"Parents are definitely interested in schools their children attend. All their ties and interests may be centered in a certain community and their convenience and their personal desires, as well as the personal desires of the landowner, should be given due consideration by the County Boards of School Trustees in determining whether the prayer of a petition to detach should be granted or denied. All things being equal, the landowner, the taxes from whose property enables the school of the

475

District to operate, the parents and students residing in the District, should be permitted to choose the school the pupil should attend."

The problems presented by the record in the case before us closely paralleled those presented in the case of Burnidge v. County Board of School Trustees, of Kane County, supra, and the courts observations in that case are applicable in the instant case. It is apparent from the evidence in the record that educational welfare of the children involved would be best served by detachment and annexation to the Sterling District.

 It also appeared from the record that the County Board of School Trustees had denied the petition for detachment and annexation on the basis of evidence in opposition which was fundamentally concerned with loss of assessed valuation. As we have observed before, every detachment and annexation results in a loss of tax base valuation and this alone should not prevent detachment and annexation where the maximum tax rate is not being levied by the losing district (Calvert v. Board of Education School Dist. No. 14, Lawrence County, 41 Ill App2d 389, 395, 190 NE2d 640). It was obvious from the record that the loss of the territory involved would not affect the operation of the Jordan Elementary School. There was the typical apprehension expressed in the record that the detachment would set a precedent in the future, but this speculative observation is not a sound basis for denial of detachment and each case should be determined on the basis of the facts and record as presented. If detachment in fact would jeopardize the losing district this would be a significant substantial basis for denial of detachment.

 While this cause does not represent as dramatic a physical situation as was considered by this Court in the recent case of Burgner v. County Board of School Trustees of Peoria County, 60 Ill App2d 267,

476

208 NE2d 54, where many of the students involved in the area sought to be detached were located across the road from the school to which they sought to be annexed and would be required to travel 10 miles by bus to go to the school from which detachment was sought, certain basic principles are similar. As we had stated in that case, while the personal wishes of the petitioners, standing alone, would not justify a change from one school district to another, the factor of convenience to the parents and the children is required to be considered and it is an obvious advantage to attend a school close to home and within one's natural community center (Burnidge v. County Board of School Trustees, of Kane County, 25 Ill App2d 503, 167 NE2d 21; Virginia Community Unit School Dist. No. 64 of Cass & Morgan Counties v. County Board of School Trustees of Cass County, 39 Ill App2d 339, 188 NE2d 886).

 Our Courts have clearly and unequivocally recognized the duty imposed upon courts of review and have set aside findings and decisions of County Boards of School Trustees where contrary to the manifest weight of the evidence. As the Supreme Court of this State has stated in Oakdale School Dist. No. 1 v. County Board of School Trustees of Randolph County, 12 Ill2d 190, at 195, 145 NE2d 736: "It is urged that the scope of review does not include a weighing of the testimony and that an administrative order must be upheld if based upon evidence. The argument is not applicable here. The rule which accords a prima facie validity to administrative decisions does not relieve the court of the important duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact. It is unnecessary for this court to advert to the dangers inherent in the relaxation of this function."

 We believe that the Circuit Court of Whiteside County was justified, on the record in this case, in finding that the decision of the County Board of School Trustees was contrary to the manifest weight of the evidence. The order of such court will, therefore, be affirmed.

Affirmed.

STOUDER and CORYN, JJ., concur.