16 Ill. App.3d 1082 (1974)
307 N.E.2d 419
JOHN J. BOWMAN et al., Plaintiffs-Appellees,
v.
THE COUNTY BOARD OF SCHOOL TRUSTEES OF DU PAGE COUNTY et al., Defendants-Appellants.
No. 72-315.
Illinois Appellate Court  Second District.
February 15, 1974.
*1083 C. Richard Johnson, T.F. Moritz, and Isham, Lincoln & Beale, all of Chicago, and Ralph J. Gust, Jr., Assistant State's Attorney, and Anthony Peccarelli, both of Wheaton, for appellants.
*1084 Donovan, Dichtl, Atten, Mountcastle & Roberts, of Wheaton, for appellees.
Judgment affirmed.
Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:
The defendant, the DuPage County Board of School Trustees (the Board), denied a petition to detach and annex a certain territory. Pursuant to the provisions of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, § 264 et seq.), the circuit court set aside the Board's finding, holding it to be against the manifest weight of the evidence, ordered the Board to effect the detachment and annexation sought, subsequently denied defendant's motion to vacate or to modify the order but permitted a stay of judgment pending this appeal.
Two issues are presented for review: (1) whether the decision of the Board was against the manifest weight of the evidence and (2) whether the circuit court should have remanded the cause for consideration of new evidence.
The record discoses that the territory involved in plaintiffs' petition to detach and annex is commonly referred to as the "Adams Road area" which, though located within the boundaries of the village of Oak Brook, is part of Elementary School District No. 181. The petition appears to have been motivated by the determination of District 181's school board to close (effective September, 1972) Hinsdale's Monroe Annex Elementary School which the petitioners' children attended, recommending that these children be bussed to the same district's Walker School in Clarendon Hills. Petitioners, in the belief that their children would be better served by Oak Brook's Butler School located in Elementary School District No. 53 (District 53), petitioned to detach the "Adams Road area" from District 181 and annex to District 53. The petitioning territory consists of approximately 46 acres, currently accommodating 29 homes. Thirteen of the families have children, there being a total of 32 children under high school age; five of the 32 are pre-schoolers and five attend a parochial school.
 1 The board of school trustees is not permitted to arbitrarily change school district boundaries. (In re Petition to detach territory from Armstrong Township High School District, 23 Ill. App.2d 127 (1959).) Its guidelines are set forth in section 7-6 of the School Code (Ill. Rev. Stat. 1971, ch. 122, § 7-6) wherein the Board is required to:
"* * * hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, and *1085 shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted, * * *."
 2 Based upon this statutory language, the Illinois Supreme Court has adopted the following test: a petition to detach and annex should be granted only where the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole (Oakdale Community Consolidated School District v. County Board of School Trustees, 12 Ill.2d 190, 193-194 (1957)). In Oakdale, supra, p. 193, it is established that the application of this "benefit-detriment" test requires the consideration of several factors, the controlling factor being the welfare of the affected districts and their pupils as a whole. It is also necessary to consider: educational factors (e.g., the differences between the facilities of the school districts, the effects detachment would have upon the ability of either district to meet prescribed standards, the affects on tax revenues of both districts, the distances from petitioners' homes to schools in both districts and the identity of the petitioning territory with the district to which annexation is sought (Virginia Community Unit School District v. County Board, 39 Ill. App.2d 339, 344-345 (1963)); the likelihood of both parent and child participation in school activities (Ottawa Township High School District No. 140 v. County Board, 106 Ill. App.2d 439, 444-445 (1969)); and, although more than the personal desires or convenience of the petitioners is required to change district boundaries (Oakdale School Dist. v. Trustees, supra, p. 193), the convenience to the petitioning parents and their children must indeed be considered. Wheeler v. County Board of School Trustees, 62 Ill. App.2d 467, 477 (1965).
 3, 4 On administrative review, the role of the judiciary is merely to determine whether the board's decision was against the manifest weight of the evidence and to ascertain that the board has complied with the standards prescribed by the legislature. (School Directors v. Wolever, 26 Ill.2d 264, 267 (1962).) While it is well established that the findings and conclusions of an administrative agency on questions of fact are to be held prima facie true and correct (Ill. Rev. Stat. 1971, ch. 110, § 274; see also, Peterson v. Board of Trustees, 54 Ill.2d 260, 262-263 (1973)), a reviewing court is not relieved of the important duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact. Oakdale School Dist. v. Trustees, supra, p. 195.
Reviewing the facts in the instant case in terms of these guidelines, *1086 some evidence in the record suggests a potential detriment resulting from the granting of plaintiffs' petition. The testimony of the Superintendent of School District 181, referring to a 1968 Indiana University study conducted for the elementary and high school districts in southern Du Page County (including Districts 181 and 53), recited one of the study's short-term recommendations: that the County Board of School Trustees of Du Page County should freeze the present school district boundaries, making exceptions only when there is concurrence on the part of the school boards involved and, even then, only for substantive modifications based upon a defensible set of criteria. The Superintendent stated that District 181 had been following this recommendation and that both Districts 181 and 53, among others, were currently involved with Northern Illinois University in a feasibility study for the creation of specific unit school districts for southern Du Page County in accordance with the recommendations made by the Indiana University study.
The thesis of the Indiana study, however, is that reorganizing existing school districts into a community unit school district would promote equal educational opportunities and a better education for all children of the area and, accordingly, the recommended freeze was to continue until there was substantial agreement on a plan for major adjustments of present boundaries. The study also stated that none of the present school boundaries were to be considered sacred.
The record does not indicate when or even if the proposed reorganization will occur, neither does it show that the granting of plaintiffs' petition would in any way interfere with a reorganization proposed by the four-year-old study. It must also be noted that the referred-to recommendation was made without contemplation of the closing of a school. While District 181's adherence to the recommendation may be reason for it to oppose the petition, the legislature has provided a more controlling standard for determining whether boundary changes should be effected, i.e., whether granting a petition to detach and annex would be in the best interests of the schools and the pupils in the effected areas.
 5 The only other detriment shown by the record is the loss of tax revenues to District 181. Defendants concede, however, that the loss would be minimal, a concession supported by testimony that less than 1/2 of 1% of the territory's assessed value would be lost to District 181. In almost every detachment case some loss of revenue results to the losing district, but when used as a basis for denying a petition, it must be shown that a serious depletion in tax resources would result. (Oakdale School Dist. v. Trustees, supra, p. 194.) Even then, the loss of assessed valuation alone will not prevent detachment when the maximum tax rate is not being levied by the losing district. (Richmond v. County *1087 Board of School Trustees, 93 Ill. App.2d 142, 145 (1968).) In the instant case, there is no evidence bearing upon the tax rate being levied.
 6 Mere proof that no detriment would occur as a result of the boundary change is insufficient to grant a petition; benefit must be evident. We, therefore, examine the benefits, if any, which would result by allowing the detachment and annexation.
The Superintendent of District 181 stated that the granting of the petition would enable that district to eliminate five daily bus trips, theoretically resulting in some savings.
A District 53 representative read into the record a letter informing the Board that it did not oppose the petition and that should the petition be granted District 53 would provide full educational services for all the elementary school children of the petitioning area.
While not relating directly to the best interests of District 53 or its pupils, testimony of the chairman of Oak Brook's Plan Commission suggested that the entire village would benefit from the granting of the petition, stating that the village has had a problem trying to create a sense of community identity and encouraging residents participation in community activities, especially among the children; that the problem exists, in part, due to fragmented school districting, i.e., the overlapping of several school districts into Oak Brook. He testified that one of the Commission's goals has been to encourage the consolidation of existing school districts in order to permit Oak Brook children to attend Oak Brook schools.
Regarding the educational welfare of the children of the petitioning area, it was established that the programs, the calibre of teaching staffs and educational opportunities in both districts are essentially equal. There was testimony, however, suggesting several reasons why the detachment and annexation would be in the best interest of the children: it was shown that Butler school is more modern and offers larger classrooms and facilities than Walker school which physical plant is suffering from lack of maintenance and age; the bussing distance from the petitioning area to the Butler School was acknowledged to be shorter and less hazardous than the bus routes to Walker School; the Superintendent of District 181 agreed that there is an advantage in having a child attend a school in close proximity to his home; and one parent from the petitioning area, a Chicago schoolteacher, testified that it had been her experience that children learn better when they have friends in class with whom they associate outside of school and that the current school districting allowed little such association.
As stated in Burnidge v. School Trustees of Kane County, 25 Ill. App.2d 503, 509-510 (1960):
"* * * an identification with a school district in a child's *1088 natural community center will inevitably result in increased participation in school activities by the child and his parents. Such increased participation cannot but result in an improvement in the educational picture of the entire area. By the same token, an unnatural identification with a school district would have an opposite result with a corresponding loss of participation and resulting poorer educational picture. In recognition of these facts the legislature made provision for proceedings to change the boundaries of existing districts."
 7 Having reviewed the record in light of the applicable tests, we find the trial court was correct in finding the Board's order to be against the manifest weight of the evidence.
After the circuit court reversed the Board's order, District 181 filed a motion requesting the court to vacate its judgment and remand the cause to the Board for further proceedings. The motion claimed that, subsequent to the Board's hearing, evidence had developed which would have a material affect on the decision to detach and annex. The evidence consisted of (1) the discovery (after the circuit court's reversal) that by reason of the detachment District 181 would lose $14,840 in 1972-73 tax revenue from the petitioning territory and (2) a series of decisions were made by District 181 permitting the students in the petitioning area to attend either the Monroe School in Hinsdale or the Walker School in Clarendon Hills. These determinations were made by District 181 between the time of hearing before the Board and the review by the circuit court.
The circuit court denied the motion and District 181 here alleges that the lower court abused its discretion for failing to remand the case.
 8 In effect, District 181 desired to introduce additional facts, not in existence at the time of the Board's hearing, in hopes of vacating an unfavorable circuit court order. The statute authorizing remandment by the circuit court (Ill. Rev. Stat. 1971, ch. 110, § 275(1)(g)) was never intended to be used for such purposes. We find no error in the circuit court's denial of defendants' motion.
For the reasons stated, the trial court's judgment is affirmed.
Judgment affirmed.
GUILD, P.J., and SEIDENFELD, J., concur.