BOARD OF EDUCATION, COMMUNITY HIGH SCHOOL DISTRICT NO. 154, McHENRY COUNTY, *et al.*, Plaintiffs-Appellants, *v.* REGIONAL BOARD OF SCHOOL TRUSTEES OF McHENRY COUNTY *et al.*, Defendants-Appellees.

Second District   No. 79-404

Opinion filed May 28, 1980.

Allyn J. Franke, of Franke and Miller, of Chicago, for appellants.

Theodore J. Floro, State's Attorney, of Woodstock (David N. Stone, Assistant State's Attorney, of counsel), for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of McHenry County which confirmed on administrative review a decision of the Regional Board of School Trustees of McHenry County (hereinafter Regional Board) granting detachment of a tract of land from Community High School District No. 154 and School District No. 17 (hereinafter Marengo districts) and permitting its annexation to Community Unit School District No. 200 (hereinafter Woodstock district).

Defendants, Richard T. Miller and F. Dianne Miller, his wife, filed a petition to detach their property from the Marengo districts and annex it to the adjacent Woodstock district. It consists of 22 acres of land owned by them and upon which their home is located. The Millers and their family are the only residents of the property and their 16-year-old son, Greg, is the only student who would be affected by the transfer from one school district to the other.

At the hearing of the petition held before the Regional Board evidence was submitted that the Millers sought annexation of their property to the Woodstock district so that Greg, who is a nationally ranked tennis player, would be permitted to participate in a program of competitive tennis which is offered by Woodstock High School. To this end they had initiated proceedings for disconnection from the Marengo districts, which did not provide any regular tennis program or activity. Mrs. Miller testified that when they purchased the property they had believed it was located in the Woodstock district and, as a consequence, had enrolled Greg in Woodstock High School where he attended for one-half year until being required to transfer to Marengo High School. She stated the transfer detrimentally affected his interest in school and was reflected by his declining grade average. The evidence also disclosed that school policy prohibited nondistrict students, such as Greg, from participating in competitive sports at Woodstock High School and, also, that a future athletic scholarship would, in all probability, be denied to Greg in absence of the training and experience he might acquire in high school tennis competition.

The record also discloses that the Millers own a business in Woodstock, where Greg is employed on a part-time basis, and that the family conducts substantially all their business and social activities in the Woodstock area. The parties agree that, other than tennis, the Marengo and Woodstock schools offer equivalent educational facilities to their students. It was also disclosed that the Miller property is located on the boundary of both districts and that there is no substantial difference in the time or distance of travel from it to the respective schools. No evidence was produced at the hearing before the Regional Board of the assessed valuation of the property in question or that its loss to the Marengo district would have any serious effect upon its tax base and revenue.

Following the hearing the Regional Board entered an order granting the petition and, on administrative review sought by the Marengo district, the trial court confirmed the decision of the Regional Board of School Trustees.

The standards to be considered by a hearing board in determining whether to permit a transfer of land from one school district to another are set forth in section 7—6 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 7—6), which provides that:

"The * * * board * * * shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto * * * the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, * * * the division of funds and assets which will result from the change of boundaries * * * [in determining]

whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted, * * *."

■■ It has been held that a change of boundary must be made in conformity with the standards prescribed by the legislature and designed with an eye to the best interests of the schools of the area and the educational welfare of the pupils. (*Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 145 N.E.2d 736; *White v. Regional Board of School Trustees* (1979), 67 Ill. App. 3d 1031, 1035, 385 N.E.2d 372, 375.) To this end, the court must on administrative review consider the record before it to determine if the findings and decision of the administrative agency are supported by the evidence. (*Trico Community Unit School District No. 176 v. County Board of School Trustees* (1956), 8 Ill. App. 2d 494, 497, 131 N.E.2d 829, 830; *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 508, 167 N.E.2d 21, 23.) This court noted in *Bowman v. County Board of School Trustees* (1974), 16 Ill. App. 3d 1082, 1085, 307 N.E.2d 419, 421, that:

"On administrative review, the role of the judiciary is merely to determine whether the board's decision was against the manifest weight of the evidence and to ascertain that the board has complied with the standards prescribed by the legislature."

Based upon the language of section 7—6 of the School Code, the Illinois Supreme Court in *Oakdale* adopted a "benefit-detriment" test to be applied in considering a petition to detach property and annex it to another district, noting that such a petition should only be granted where the benefit derived by annexing an affected area clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole. (*Oakdale*, 12 Ill. 2d 190, 193-94, 148 N.E.2d 736, 737.) In *Bowman* the court found that in applying this test the controlling factor was the welfare of the affected districts and their pupils as a whole and that in making a determination it was proper to consider educational factors, differences between the facilities of the school districts, the effects detachment would have upon the ability of either district to meet prescribed standards, the effects on tax revenues of both districts, distances from petitioners' homes to schools in both districts and the identity of the petitioning territory with the district to which annexation is sought, the likelihood of both parent and child participation in school activities, and the personal desires or convenience of the petitioning parents and their children. *Bowman*, 16 Ill. App. 3d 1082, 1085, 307 N.E.2d 419, 421.

It is apparent in the present case that the Miller petition to detach from the Marengo district and annex to the Woodstock district was solely

premised on the benefit to their son Greg which would be derived from his participation in the Woodstock tennis program. The Marengo district contends that a boundary change granted for such purpose is manifestly improper as it does not serve the best interest of the area's schools and pupils as a whole but merely to satisfy the personal preferences of the Miller family. See, *e.g., Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 367 N.E.2d 788.

■■ We have previously held that a change in a school boundary may properly be granted where the detachment and annexation will effectuate an educational improvement in the area. (*Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 167 N.E.2d 21.) If all other relevant factors are the same, we find this reasoning no less persuasive when applied to a single student residing in the annexed territory. Where, as in this case, disconnection from one district and attachment to another will neither benefit nor damage the schools or the community or their pupils generally, the educational welfare of an individual student affected may well be determinative of whether or not to grant such a petition. (See *Virginia Community School District No. 64 v. County Board of School Trustees* (1963), 39 Ill. App. 2d 339, 188 N.E.2d 886.) It seems apparent that enabling Greg Miller to receive the additional training and experience available at Woodstock to nurture his exceptional talent is no less an educational benefit to him as would be any other program offered by a school. (See *Burnidge,* 25 Ill. App. 2d 503, 509-10, 167 N.E.2d 21, 24.) The immediate benefit to him would also enhance his future educational and career opportunities. We are substantially persuaded towards the view we have taken in this unusual case by the absence from the record of any evidence of detriment to the Marengo district or its other students. While it is apparent that every detachment and annexation necessarily results in some change of tax bases, it has been held that to be a basis for denying a petition it must be shown that a serious depletion in tax resources would result. (*Bowman,* 16 Ill. App. 3d 1082, 1085, 307 N.E.2d 421, 422.) No evidence in that regard has been presented in this case. Moreover, the record fails to disclose whether the Marengo district was levying at its maximum tax rate. It has also been held that a loss of assessed valuation alone, where the maximum tax rate is not being levied by the losing district, should not prevent detachment and annexation. (*Wheeler v. County Board of School Trustees* (1965), 62 Ill. App. 2d 467, 210 N.E.2d 609.) In these circumstances we can only conclude that the tax revenue of neither district would be materially affected.

■■ Our conclusion is bolstered by the fact that the Millers identify themselves economically and socially with the Woodstock district where both Mrs. Miller and Greg are employed; and, while personal preference and convenience alone would be insufficient to authorize such a transfer,

when taken together with the educational benefit to Greg Miller we find that the statutory standards are met. As the court said in *Burnidge*: " '* * * All things being equal, the landowner, the taxes from whose property enables the school of the district to operate, the parents and students residing in the district, should be permitted to choose the school the pupils should attend.' " (25 Ill. App. 2d 503, 511-12, 167 N.E.2d 21, 25.) We conclude that the Regional Board's determination that the transfer of the property from one district to the other would serve the best educational interests of the petitioners' son without jeopardizing the educational capabilities of the districts involved was supported by the evidence before it.

For these reasons the judgment of the Circuit Court of McHenry County is affirmed.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.