ROBERT RHINEHART *et al.*, Plaintiffs-Appellants, *v.* BOARD OF EDUCATION OF BLOOMINGTON SCHOOL DISTRICT NUMBER 87 *et al.*, Defendants-Appellees.

(Nos. 11275-6-7, cons.;

Fourth District—June 24, 1971.

Ensel, Jones, Blanchard & Friedman, of Springfield, (Simon L. Friedman, of counsel,) for appellants.

Pratt, Heffernan & Ramseyer, of Bloomington, (John T. Pratt, of counsel,) for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

A Hearing Board appointed pursuant to par. 7—2.5, and acting pursuant to par. 7—2.6 of ch. 122, Ill. Rev. Stat., 1969, ordered that each of three parcels of land be annexed to the defendant school district. The trial court affirmed such orders. The plaintiffs appeal each of them.

The Hearing Board which consists of seven persons, two of whom are legal voters of the territory affected by annexation or detachment, two of whom are appointed by the board of the special charter district and three of whom are selected by the four, determined that the territory in each of the three petitions numbered 2, 3 and 4 should be annexed to Special Charter District No. 87, City of Bloomington, and detached from Community Unit District No. 5, which includes the City of Normal and the Villages of Hudson and Towanda, McLean County. The petitions were filed by the Board of Education of Special Charter District No. 87, and the record title holders of the real estate. The real estate involved in the tracts was annexed by the City of Bloomington.

Counsel for the respective school districts stipulated that both districts are recognized by the Superintendent of Public Instruction of the State and that each district is offering more than adequate educational services for the children, that the community unit district is required to offer bus transportation to children living more than one and one-half miles from their attendance centers, and the special charter district does so voluntarily, that there were no persons residing on any of the three tracts at the time the petitions were filed, and that each tract was zoned for single family residence at the time the petitions were filed.

Community Unit District 5 completely surrounds the City of Bloomington and Special Charter District No. 87 (which includes a small amount of rural territory), with the result that any annexation of territory to District No. 87 will necessarily detach the same territory from Unit District No. 5. District No. 87 is small, relatively compact, and and comprises 9½ square miles whereas Unit District No. 5 contains 200 square miles. Since 1959 there have been a series of annexations to Bloomington and disconnections from Unit 5, numbering 23, including the ones before us here. The wealth per student in each district has remained substantially the same since the school year 1960-61. Regardless of the outcome of the present petitions, the ability of each district to carry on educational programs in accordance with directives of the

State Superintendent of Public Instruction will not be affected, and the result will not make any substantial financial difference to either district.

Petition No. 2, herein referred to as the Striegel Tract, contains 10½ acres with an assessed value of $3,690.00 in 1968. It is platted as a residential sub-division and the preliminary plat was filed with the City of Bloomington. Mr. Striegel, the developer, testified that he preferred the tract to be in the Bloomington School District.

Petition No. 3, herein referred to as the Niepagen tract, is adjacent to the Striegel Tract, contains 11.92 acres and had an assessed value of $5,960.00. The owner and developer testified that he intended to build 10 houses at a price range attractive to younger families with children of school age, and that based on his experience there would be two to three children per home.

As to distance, the parties stipulated:

"The Brigham School, a grade school attendance center in Unit 5, is closer to the Striegel and Niepagen tracts by 5/10ths of a mile than the Bloomington Attendance Center. However, it is necessary that students be transported along and across U.S. 66, a heavily travelled four-lane highway to the Brigham School, which is not necessary if such students attend school in the Bloomington School District. In each and every other case the distances are substantially farther to the Unit 5 elementary, Junior High and High School attendance centers than to the respective Bloomington attendance centers. In each instance, insofar as High School and Junior High School are concerned, students must be transported either through or around the Bloomington School District in order to attend Unit 5 attendance centers. The same is true, to some extent, as to elementary attendance centers. As to the Bunn Street Tract, elementary students must be transported from a near-by elementary attendance center in the Bloomington District to an attendance center elsewhere in Unit 5."

There was testimony that Brigham School is kindergarten through sixth grade, and has about 630 students. The transportation involved would be about 15 to 25 minutes one way, and an hour the other way. In Bloomington, elementary students from the Striegel and Niepagen areas would be transported to Irving School within about 15 to 20 minutes. The Bunn Street Tract is 6 or 7 blocks from the Emerson Elementary School and students could walk.

The parties further stipulated as to intergovernmental action in Bloomington as follows:

"The Bloomington City Government and the Bloomington School System work together for the benefit of the entire community. This

takes place in the areas of fire safety, city rescue, police, parks and recreation, safety and citizenship. The Police and Fire Departments and other City Government people visit the schools in classroom type situations to discuss the functions of their departments. School crossing guards are furnished by the City. Meetings are held with neighborhood P.T.A. groups to discuss and resolve local neighborhood problems. Nine separate school facilities are used by the City in connection with its summer recreation program, a supervised program for all children in the community. School playgrounds, rest rooms and portions of the school buildings are used by the City people. There was a total attendance of 19,812 children during the summer of 1968 in this program."

"Adult basketball programs were carried on in two schools in the 1968-1969 school year under the City program. Programs were under way to use four schools on Friday night and Saturday morning for children and adults. There is none or very little cost to the City for the use of school facilities in connection with programs being offered for citizens, residents and taxpayers of the City of Bloomington who are likewise citizens, residents and taxpayers of the Bloomington School System."

A fourth petition concerning the Lincolnwood area considered by the Hearing Board is not on appeal, seemingly because a new elementary school is being built in the area. It appears that four persons with children had moved to the area after the petition was filed, and two of them, Rev. Robert L. Myers and Rev. Walter Wakefield, testified that they would not have bought homes in the area if they had not thought they would send their children to the Bloomington Schools. Rev. Myers stated:

"We feel it is only reasonable and good sense that a child goes to school in the same City in which he resides and this business of overlapping school districts to the average person is a little bit strange to say the least. We feel that it is a matter of community integrity that a child go to a school in the same city in which he lives because there are children in the next block that attend the Bloomington Schools and now our children are asked to go up to Normal and attend there and so in a sense you break down a community."

Illinois Revised Statutes, 1969, chapter 122, par. 7-2.6 provides:

"The Hearing Board (a) shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto, and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, (b) shall take into consideration the division of funds and assets which

will result from any change of boundaries, and the will of the people of the area affected, and (c) shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils should such change in boundaries be granted."

This record presents no question as to the ability to meet standards or division of assets. While the point is not entirely conceded by the witnesses, the clear weight of the evidence is that a residential district which sends any substantial number of children to a school district costs the district more than it furnishes in tax revenues. The "will of the people of the area affected" does not appear to have been referred to in the statute prior to 1967. In this case if the "area affected" is confined to the areas described in the petition, the will of the people would necessarily be that of the owners.

The plaintiff, Unit District No. 5, complains chiefly that such part of the order of the Hearing Board as finds that the annexation to School District No. 87 is "in the best interest of the schools of the area and the educational welfare of the pupils" is against the manifest weight of the evidence.

■■ Plaintiff contends that the Amendatory Act of 1967, ch. 122, pars. 7-2.3 to 7-2.7 inclusive, Ill. Rev. Stat. 1967, completely changed the policy established by the Legislature. Formerly annexation to a city automatically annexed the territory to the Special Charter School District unless the school district from which the territory was detached filed a petition to set aside the annexation, and sustained the burden of proving that the annexation was not in the best interests of the schools of the area and the educational welfare of the pupils. Since 1967 under ch. 122, par. 7-2.3, Ill. Rev. Stat., annexation to a City does not constitute annexation of the territory to the special charter school district. Now a petition must be filed with the district seeking annexation by a certain percentage of voters, or if there are no legal voters in the area "by 50% of the owners of record of the real estate of the territory". The proponents of annexation to the special charter district must sustain the burden of establishing the fact that the annexation is in the best interest of the schools of the area and the welfare of the pupils.

Plaintiff cites the decision of *Board of Education of Springfield School District No. 186 v. Scott*, 105 Ill.App.2d 192, 244 N.E.2d 821, as controlling in this case. Plaintiff especially relies upon the fact that in the *Scott* case there were no pupils in any of the three territories, and this Court stated that it was virtually impossible to conceive of any manner in which testimony could have been available with respect to the educational welfare of the pupils. It should be borne in mind that the tracts there involved were a small unimproved tract near Rochester School

District, a five acre tract near Route 66 which was an unimproved tract in Ball-Chatham District and a separate 1.78 acre unimproved tract in the Ball-Chatham District.

■■ Here the Striegel Tract of 10½ acres has been platted as a residential subdivision and is zoned residential. The developer testified as to his plans. The Niepagen tract of 11.92 acres adjoins the Striegel Tract and is zoned residential. The Bunn Street Tract of 3.69 acres was platted as a ten lot subdivision, and the developer testified that he planned to erect houses attractive in price to young families. As opposed to the *Scott* case where the scattered small tracts were simply acreage several miles from the main portion of the City of Springfield and a like distance from schools of the other districts, the tracts here involved appear to be an integral part of the main activity of the City of Bloomington and the residential potential is immediate. In the hearing before this Hearing Board on a similar tract where some houses had been built between the filing of the petition and the hearing, witnesses testified that they would not have bought if they had believed their children would not go to the Bloomington Schools. The Hearing Board could well have concluded that in all cases the course of development and land values would be favorably affected by including the tracts in District No. 87, and unfavorably affected by including them in Unit District No. 5. In all cases except that of the Brigham Elementary School, the distances substantially favor the Bloomington School District. In the case of the Brigham School, the travel time favors neither district, but the necessity of travelling along and across U.S. 66 is an objection to belonging to Unit No. 5.

Nothing suggests a statutory intent that the single fact that there were no pupils in a territory would preclude a showing of the benefits and detriments to an immediately potential student population.

In *Burnidge v. School Trustees of Kane County*, 25 Ill.App.2d 503, at 505, 510, 167 N.E.2d 21, there were no persons living on the land sought to be attached to the Elgin District. The court there considered the proximity of the land to the schools, the identification of a school district with a child's natural community center and the effect upon property values. In *Wheeler v. County Board of School Trustees*, 62 Ill.App.2d 467, 210 N.E.2d 609, on 612 the court approved the reasoning of the *Burnidge* case, and emphasized physical proximity and natural identification with the community as bearing directly upon the educational welfare of the pupils. In *School District No. 106 Cook County v. County Board*, 48 Ill.App.2d 158, 198 N.E.2d 164, at 165-6, the division of the territory by a toll road, which was the cause of the filing of the petition, was recognized as an important factor bearing on the educational welfare of the students. The court also noted the language of the *Burnidge*

opinion concerning the identification of the school district with the child's natural community center. In a similar case, *Board Ed. Bloomington v. County Board of School Trustees,* 77 Ill.App.2d 368, 222 N.E.2d 343, 345, this court took note of testimony similar to the testimony before the present Hearing Board of the social and cultural orientation toward the City of Bloomington. We also took note of the difficulty presented by one school district being completely surrounded by another.

■■ It is not the function of this court to reweigh the evidence submitted to the administrative body, and unless we should find that the order is clearly against the manifest weight of the evidence we would not be authorized to disturb it. *Board of Education of School District No. 186 v. Scott,* 105 Ill.App.2d 192, 244 N.E.2d 821, 824.

We think the Hearing Board had a duty to take into consideration the factors which we have noted concerning the welfare of prospective pupils. There was no evidence presented which would indicate that the welfare of the pupils would be enhanced by remaining in Unit No. 5. We are unable to say that the finding of the Hearing Board that annexation to the City of Bloomington Special Charter District No. 87 was against the manifest weight of the evidence.

The judgment of the trial court should be affirmed.

Judgment affirmed.

SMITH, P. J., and CRAVEN, J., concur.