LAURA C. KNAPP *et al.*, Plaintiffs-Appellees, *v.* THE HEARING BOARD OF THE COUNTY BOARD OF SCHOOL TRUSTEES OF McLEAN COUNTY *et al.*, Defendants-Appellants.

Fourth District   No. 14382

Opinion filed September 30, 1977.

Fleming, Messman, Lapan & O'Connor, of Bloomington (Martin L. O'Connor and Thomas A. Eckols, of counsel), for appellants.

Pratt, Larkin & Williams, of Bloomington (John T. Pratt and W. Charles Witte, of counsel), for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:
Pursuant to section 7—2.4 of the School Code (Ill. Rev. Stat. 1975, ch.

122, par. 7—2.4), plaintiffs filed a petition with the County Board of School Trustees of McLean County seeking detachment of a 40-acre tract from defendant Community Unit District No. 5 of the McLean and Woodford Counties (Unit 5) and attachment of that tract to Bloomington School District No. 87, McLean County, a special charter district (District 87). After a hearing, the Hearing Board denied the petition. Upon review pursuant to the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, pars. 264 to 279), the Circuit Court of McLean County reversed the decision of the Hearing Board. Unit 5 appeals.

Section 7—2.6 of The School Code (Ill. Rev. Stat. 1975, ch. 122, par. 7—2.6) provides that the Hearing Board,

"(b) shall take into consideration the division of funds and assets which will result from any change of boundaries, and the will of the people of the area affected, and (c) shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils should such change in boundaries be granted."

Upon administrative review in the circuit court, plaintiffs maintained that two of the findings of the Hearing Board were contrary to the manifest weight of the evidence and had erroneously controlled the decision. In reversing, the circuit court agreed. These findings were:

"7. That the division of funds and assets between the affected districts will not be materially affected by the granting or denying of the petition.

* * *

9. That Petitioners have not proved by a preponderance of the evidence that the proposed annexation would be in the best interests of the schools in the area or the educational welfare of the pupils."

The geographic relationship of the two districts is unique. Unit 5 has an area of 210 square miles and includes the municipalities of Normal, Carlock, Hudson, Towanda and parts of Bloomington. It completely surrounds District 87. For many years, legislation was in force which, because District 87 was a special charter district, caused territory annexed to the City of Bloomington to automatically annex to that district. In 1967, sections 7—2.3 to 7—2.7 of the School Code (Ill. Rev. Stat. 1967, ch. 122, pars. 7—2.3 to 7—2.7) were amended to delete that automatic annexation provision. Since that time, the City of Bloomington has annexed some territory which has remained in Unit 5. At the time of hearing, 220 Unit 5 pupils lived in the City of Bloomington.

The 40-acre tract in question had been annexed to the City of Bloomington but remained in Unit 5. It is in the southeast part of the city and is the south half of an 80-acre tract lying south of Lincoln Street and west of Hershey Road. The north 40 acres was in District 87. On the east

side of Hershey Road, catty-cornered from the northeast corner of the 80-acre tract is the southwest corner of another 80-acre tract which is also within District 87. The entire 160 acres had been zoned for residential purposes. Witnesses testified that a partnership of which plaintiff Snyder was a member was developing or had plans to develop the entire 160 acres. Broadmoor Subdivision lying north of Lincoln Street and west of Hershey Road was already developed.

The most complicated question before the Hearing Board concerned the financial effect upon the two districts that would likely result from a change of boundaries. In cases of this nature, the concern of the courts of review of this State has usually focused upon the relationship between the changes in assessed valuation of taxable property in the respective districts and the changes in the number of pupils that each district would be required to serve. Here, plaintiff District 87 maintains that because of the equalizer factor of section 18—8 of The School Code (Ill. Rev. Stat. 1975, ch. 122, par. 18—8), the significant issue is which district should receive the State aid that, upon residential development of the 40-acre tract, will inure to the district in which it then lies. Both districts qualified for aid under section 18—8 which, conditioned upon sufficient legislative appropriation, guaranteed each district a sufficient State supplement to provide each district with funds equal to $520 per year per pupil in "weighted average daily attendance." The effect of this formula is that if the assessed valuation of a district remains constant, each additional pupil enrolled produces for the district $520 in additional funds.

The heart of plaintiff District 87's argument in this case is that because the student population of its district has steadily declined in recent years, it needs more pupils to effectively utilize its system and that the funds that would inure to it if the 40-acre tract is residentially developed and annexation is permitted would far outweigh the burden of serving the additional pupils. On the other hand, District 87 maintains that since Unit 5 has experienced a steady increase in enrollment, its system is being fully utilized and the burden of serving additional pupils would minimize or negate any advantage from the additional revenue. Witnesses for District 87 testified that they thought that decline in enrollment occurred because people were moving from the inner city of Bloomington to the outlying areas of the community, outside of District 87 boundaries. District 87 contends that because it is completely surrounded by Unit 5, it cannot maintain an enrollment level consistent with the system it has developed unless it is permitted to annex some territory of Unit 5.

The parties agree that from the 1971-72 school year to the 1975-76 school year the enrollment in District 87 declined from 7,117 to 6,445, a loss of 672 pupils, while the enrollment in Unit 5 increased from 6,292 to 6,890, a gain of 598 pupils. Dr. Lawrence Shoaf, director of business

services for District 87, testified that school administrators generally agree that "in the short run" a school district is not able to proportionately reduce its expenditures to meet a reduction in enrollment. The evidence of decreasing enrollment indicated District 87 was, nevertheless, faced with the problem of attempting to do this each year. Also supporting District 87's argument was evidence that because of overcrowding at the grade school nearest the 40-acre tract, Unit 5 would have to bus grade school pupils from the tract 4½ miles to a grade school.

The parties do not dispute that the existence of the equalizer formula in section 18—8 does not completely eliminate the significance of the amount of assessed valuation in the districts because some levies are not affected by the formula. During the time that the District 87 enrollment has dropped by 672 pupils, its assessed valuation per pupil has risen from $24,409 to $35,238 and its total assessed valuation from $173,725,751 to $227,114,015. In the same period of time, Unit 5's assessed valuation per pupil has risen from $20,549 to $25,709 and its total assessed valuation from $129,244,700 to $177,135,831. It is readily apparent that District 87 is, by a substantial margin, the more favorably situated district as far as assessed valuation is concerned.

■■ ■ From the evidence presented to us, we find merit in the argument of District 87 that the benefits to it of the additional enrollment that would likely come from permitting annexation of the tract would exceed the benefits, if any, that would inure to Unit 5 by permitting it to retain it. The principle, enunciated by Dr. Shoaf, that a school district cannot easily contract its operation to meet a reduction in enrollment is at the heart of our determination. We believe this to be generally true in regard to the use of administrative staff, special services and buildings. Where the district has been losing pupils and this is countered by the addition of pupils from newly annexed territory, the addition of these pupils would tend to bring about a fuller use of existing capacity. On the other hand, when a district is already growing in enrollment, a further addition in pupils often occasions a strain upon existing capacity. The evidence that pupils living in the 40-acre tract would have to be bused 4½ miles to a grade school because the closest grade school in Unit 5 was overcrowded would indicate that Unit 5 would receive little benefit from the additional enrollment that would arise from the residential development of the tract. For these reasons, we find the Hearing Board's determination that plaintiffs-petitioners had not proved that a change of boundaries would be in the best interest of the schools to be contrary to the manifest weight of the evidence.

■■ The evidence on the question of the educational welfare of the pupils is similar to that in many of the change of boundary cases. None of the parties disputes the equally high quality of the educational program

in each of the districts. Plaintiffs base their claim that the educational welfare of the pupils would be benefited upon the fact that schools which the children in the area would attend would be closer if the land were in District 87 than if it were in Unit 5 and upon their claim that the area has a closer identification with District 87 than with Unit 5. Both of these factors have been ruled to be proper matters for consideration. *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 167 N.E.2d 21; *Wheeler v. County Board of School Trustees* (1965), 62 Ill. App. 2d 467, 210 N.E.2d 609.

The distance from the tract to the closest District 87 grade school was 2.4 miles while the closest distance to a Unit 5 grade school was about 4.5 miles. For junior high schools, the respective distances were 3.7 and 5.7 miles while for high school they were 3.7 and 6.5 miles. There was no direct opinion evidence that the tract was more closely identified with one district rather than the other. Since the tract was on the southeast periphery of Bloomington, however, mere location would indicate a somewhat closer attachment to Bloomington than to Normal, the principal metropolitan center of Unit 5. Once the 80-acre tract, of which the tract in question is the south half, is developed as a residential subdivision, the people living in the south half would be more likely to identify with those living in the north half than with the rural population on their other sides. The area in the north half of the 80-acre tract is in District 87 while the rural population lives in Unit 5.

Defendants maintain that the difference in distances to schools is not of great significance when, in any event, the pupils must be bused and the arrangement of the bus routes is not shown. They also maintain that no inference can be made that the tract has a closer tie to one district than the other. Most of their argument on the issue of the educational welfare of the pupils is that the question may not be considered where, as here, no pupils reside in the area for which change of districts is sought. In *Board of Education v. Scott* (1969), 105 Ill. App. 2d 192, 201, 244 N.E.2d 821, 825, this court reversed the order of a county board of school trustees which refused to set aside an automatic annexation of three vacant tracts to a charter district under the then existing provision of the School Code. The opinion stated:

> "There being no pupils in the annexed territory, no testimony possibly could be produced, nor was any produced, to meet the consideration and test of the education welfare of the pupils."

On the other hand, in *Rhinehart v. Board of Education* (1971), 132 Ill. App. 2d 1078, 271 N.E.2d 104, this court affirmed an order of a Hearing Board which ordered annexation of territory in which no pupils resided. The decision was based in part upon a showing having been properly made that the change was in the best interests of the educational welfare

of pupils who would likely live in the area. *Scott* was distinguished upon the basis that residential development was imminent. All of the tracts in *Rhinehart* were shown to be subject to plans for development and had been zoned residential but one of the tracts, as is the case with the instant tract, had not yet been platted. It is obviously desirable to plan ahead as to which school district a residential subdivision will be in so that the district affected can plan for the influx of pupils and the purchasers of lots will have some assurance of knowing where their children will go to school. Early planning also prevents the trauma of later disputes over boundaries and the difficulty of making changes after children have started to school in a particular district and bus routes have been established. As explained by *Rhinehart, Scott* does not prevent consideration of pupils' best interests in the instant case.

■■■ The decision of the Hearing Board can be properly set aside only if it is contrary to the manifest weight of the evidence (*Burnidge*). In *Locher v. County Board of School Trustees* (1975), 29 Ill. App. 3d 271, 330 N.E.2d 282, we emphasized that deference should be given to the local administrative agency ruling upon the boundary question. Here, however, we determine that: (1) the shrinking enrollment of District 87 as compared to the rising enrollment of Unit 5 clearly makes the requested detachment-annexation more of an economic advantage to District 87 than an economic detriment to Unit 5, (2) because of the shorter distance to schools and slightly more involvement of the area with District 87, the educational welfare of the pupils will be clearly enhanced to some extent, and (3) the owners of the area desire a change (*Board of Education v. County Board of School Trustees* (1966), 77 Ill. App. 2d 368, 222 N.E.2d 343). Accordingly, we agree with the trial court that the ruling of the Hearing Board was contrary to the manifest weight of the evidence.

Over the years litigation concerning boundary changes between District 87 and Unit 5 has occurred. Some cases, including *Rhinehart* and *Board of Education v. County Board of School Trustees*, have reached this court. In the latter case and in *Scott*, this court recognized that although in an isolated boundary change proceeding, the effect of detachment upon the district losing the territory may be minimal, the combined effect of a continual nibbling at its borders may work a substantial detriment to that district. The effect of continued nibbling at the boundaries of Unit 5 was, no doubt, a matter of serious concern to that district here as well as to the Hearing Board. We also gave that matter serious consideration. The evidence of educational advantages to the prospective pupils who might later live in the 40-acre tract was not, of itself, sufficient to cause us to require the nibbling at Unit 5's borders which our decision will bring about. We require this boundary change because of the evidence that the enrollment in Unit 5 was increasing while

that in District 87 was decreasing and the evidence that the facility of Unit 5 nearest to the tract was already overcrowded. Under these circumstances, we determine that it is clearly evident that the best interests of the school districts in the area require that when the tract is developed as a residential subdivision, the children living there go to the nearer schools in the district that faces the possibility of diminishing the scope of its operations unless enrollment enlarges rather than the district whose enrollment is expanding and whose schools are located at a greater distance from the tract. In this way the most efficient use of facilities is most likely to occur.

For the reasons stated, we affirm the judgment of the circuit court reversing the decision of the Hearing Board.

Affirmed.

TRAPP, P. J., and MILLS, J., concur.