ETHEL FROMM et al., Plaintiffs-Appellants, v. WILL COUNTY BOARD OF SCHOOL TRUSTEES et al., Defendants-Appellees.

Third District   No. 74-276

Opinion filed August 31, 1976.—Rehearing denied October 22, 1976.

William R. Penn, of Joliet, for appellants.

Martin Rudman, State's Attorney, and McKeown, Fitzgerald, Zollner & Buck, both of Joliet (Richard Buck, of counsel), for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This appeal arises from the denial by the Will County Board of School Trustees of a petition to detach 4,000 acres of land from the Joliet high school district and to annex to the Minooka high school district. On administrative review, the Circuit Court of Will County affirmed the order of the Board and plaintiffs appeal.

Ten persons owning 24 of the 4,000 acres located in a rural area south of Joliet, signed the petition. Approximately eight children reside in the area, two of whom were high school age and who attended Minooka high school in Grundy County as tuition-paying nonresidents of the district.

The area in question was previously owned by the United States Government and was uninhabited prior to 1965 when it was sold to private investors. In March, 1972, at the time of the hearing, 1,567 acres were zoned agricultural and the rest had an I-2 (heavy industry) classification. An industrial district of 1,140 acres was being developed and advertised; a new oil refinery was nearing completion; a livestock market was under construction; and other industries had located in the area, which had ready access to deep waterway transportation, a railroad line, Interstate Route 55, a large gas pipeline, and an electric highline. There was considerable testimony explaining the anticipated development of the area and the probable future increase in assessed valuation by as much as $100,000,000. There was evidence that the geography of the area was not suitable for either agricultural use or subdividing, but was advantageous for industrial uses because bed rock lies near the surface.

According to testimony at the hearing, Joliet high school district had serious financial problems and a growing school population, and obviously needed the increased tax base expected as the area developed. Joliet is an urban high school district with social, racial and economic diversity in its student body. In 1972 it offered over 200 course selections to its 6,500 students, and had a student-teacher ratio of 17-1. Joliet high school enrollment had increased by 2,141 students over the last ten years. Minooka had a new high school building, 80 courses for its 460 students, a student-teacher ratio of about 14 to 1, and a better vocational education program. Joliet did not provide bus service for any students, and the distance from the affected area was about 16 miles. Minooka did provide bus transportation to its school located nine miles from the area.

Some of the petitioners testified that their social and business connections were with Minooka, that the grade school classmates of their children from Channanon elementary school all attended Minooka high school, that Minooka closed its school for "snow days" when roads were impassable but Joliet did not, that they could not transport their children to Joliet for extracurricular activities but they could to Minooka, that the absence of school bus service to Joliet was a serious inconvenience, that the roads traveled to Minooka were safer than those to Joliet, and that their children would receive a comparable or better education at Minooka. The area sought to be detached is entirely within the Channanon elementary district. Channanon grade school personnel testified that the grade school curriculum, testing and guidance program

were unified with that of Minooka high school, which would be to the advantage of the affected students if they could attend Minooka rather than Joliet.

The Joliet superintendent testified about the educational program of the high school and the district's financial problems. The assessed valuation per student had been decreasing, and detachment of this area would result in a present loss of $56,000 net annual tax income for Joliet, which had annual expenditures of $10,000,000. However, the district anticipated a loss of as much as $1,720,000 annually in future years. The Joliet district was levying the maximum rate permissible without a referendum, while Minooka was not levying its maximum rate. Because of growing budget deficits, and the defeat of tax increase proposals by the voters in 1968, 1969, 1970 and 1971, Joliet school officials expected to have to curtail some programs, to increase average class size, and to cutback building maintenance in the coming years.

The Will County Board of School Trustees denied the petition, with the following finding:

"[T]he change of boundaries would not be to the best interests of the schools * * * in the area sought to be detached and adjacent to said area, and further it would not be to the best interests of the Districts involved and the Schools therein considering the division of funds and assets which would result from the requested change of boundaries, and said change would not be to the best interests of Joliet Township High School District No. 204, Minooka High School District No. 111 and the educational welfare of the pupils."

Thereafter, the Grundy County Board of School Trustees (where Minooka is located) approved the petition, and administrative review of the Will County Board order was filed in the circuit court. The court affirmed the denial, and this appeal followed.

The primary question presented for review is whether the order of the Will County Board of School Trustees denying the petition to detach was against the manifest weight of the evidence. If we find that the decision of the Board was supported by substantial evidence, we must affirm. (*Wheeler v. County Board of School Trustees of Whiteside County* (3d Dist. 1965), 62 Ill. App. 2d 467, 472, 210 N.E.2d 609.) The School Code (Ill. Rev. Stat. 1976, ch. 122, par. 7—6), provides in part:

"The county board of school trustees shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to

the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted* * *."

■■ A definitive interpretation of this provision was made in *Oakdale School District v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 193-94, 145 N.E.2d 736, where the court emphasized that the educational welfare of the affected districts and their pupils as a whole must control, rather than the wishes of a few. School boundaries should be changed only where the benefit to the annexing district and the affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole.

■■ Here substantial evidence was presented demonstrating the detrimental financial impact of the proposed detachment on the Joliet high school district. Without detailing that evidence, it is fair to say that, because of the deteriorating financial condition of the Joliet school, and the relatively comfortable financial situation of the smaller Minooka school, the economic impact of the proposed detachment of the developing industrial area is evidence which supports the Board's decision. Although the financial detriment of the losing district will not alone justify denial of a petition unless the financial loss would seriously interfere with the operation of the district, it is nevertheless one factor to be weighed by the Board. *Locher v. County Board of School Trustees* (4th Dist. 1975), 29 Ill. App. 3d 271, 330 N.E.2d 282; *Wheeler v. County Board of School Trustees* (3d Dist. 1965), 62 Ill. App. 2d 467, 210 N.E.2d 609.

■■ Another consideration must be the comparative educational values of the two schools. (*Ottawa Township High School v. County Board of School Trustees* (3d Dist. 1969), 106 Ill. App. 2d 439, 246 N.E.2d 138, 142.) The Board here heard evidence concerning the relative merits of the educational programs available. The larger Joliet school offers a more varied curriculum, a superior library, and a diverse racial and social environment, in contrast to the more limited offerings of the Minooka school.

■■ The Board also heard evidence concerning the convenience and preference of the parents and students living in the area sought to be detached. The advantages of attending a school close to home and within a natural community center have been acknowledged many times. (*E.g., Bowman v. County Board of School Trustees* (2d Dist. 1974), 16 Ill. App. 3d 1082, 307 N.E.2d 419, 423; *Wheeler v. County Board of School Trustees* (3d Dist. 1965), 62 Ill. App. 2d 467, 474-77, 210 N.E.2d 609.) However, we cannot say that the physical proximity of Minooka high school to the few students affected should be controlling under the circumstances of this case where other factors are not equal.

Plaintiffs rely upon *Newman v. County Board of School Trustees* (4th Dist. 1974), 19 Ill. App. 3d 584, 312 N.E.2d 35, where the court reversed a denial of a detachment-annexation petition, and held that the financial loss of one district will not alone prevent detachment unless the maximum legal tax rate is already being levied. In other words, if the losing school district can replace lost revenues by increasing its tax rate, its educational facilities and programs will not be adversely affected, and the district cannot claim a detriment to its educational program. Plaintiffs here contend that, since Joliet has not reached the statutory maximum rate which can be levied with voter approval, *Newman* would require us to reverse, even though the district is levying the maximum rate permissible without a referendum. In *Community Unit School District v. County Board of School Trustees* (3d Dist. 1956), 9 Ill. App. 2d 116, 127-28, 132 N.E.2d 584, a similar contention was considered, and the court observed that the refusal of the electorate to approve earlier tax rate increases "is not conclusive" in a detachment proceeding. The court then affirmed the Board's approval of the petition.

■■ Plaintiffs' argument overlooks the fact that in *Newman* the *only* evidence which supported the denial of the petition was the alleged financial detriment to the losing district, and all the other evidence favored detachment. In the case before us, we believe the earlier refusals of the electorate to approve tax increases cannot be ignored in weighing the financial impact of a 5.6 percent loss in operating revenue on the Joliet district, and we do not interpret the *Sangamon County* case or *Newman* as requiring the Board to do so. As a practical matter, the Joliet high school district was at its total maximum educational rate allowed without further referendum at the time of the hearing, and Minooka was not. Furthermore, evidence of financial impact was not the only evidence in support of the Board's decision, as we have noted.

This case is remarkably similar to *Locher v. County Board of School Trustees* (4th Dist. 1975), 29 Ill. App. 3d 271, 274, 330 N.E.2d 282, 285, where the court stated:

> "The various factors established by the evidence cannot be placed upon a scale and weighed to produce a result which is correct to a mathematical certainty. The trustees are better acquainted with local conditions, and the decision to permit or to deny detachment is best left to local decision without interference by the courts, provided the general statutory guidelines have been complied with, and the record contains, as it does here, evidence to support the decision. Whether this court, given these facts, would have reached the same decision is beside the point."

■■ From the record, we cannot say that the benefits to Minooka and the pupils residing in the affected area would clearly outweigh the

detriment to the Joliet school district and its pupils. Therefore, we find that the order was not against the manifest weight of the evidence.

Petitioners have called to our attention the erroneous finding by the Board that the proposed change in boundaries would not be in the best interest of the Minooka school district. There was no evidence to support such a conclusion. However, the only concern of a reviewing court is whether the order appealed from was correct, regardless of the reasons given. *Hausmeister, Inc. v. Waibel* (3d Dist. 1975), 29 Ill. App. 3d 289, 329 N.E.2d 825.

Having concluded that the order denying the detachment petition was not contrary to the manifest weight of the evidence, we affirm the judgment of the Circuit Court of Will County.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.