ROLLO D. BURNETT *et al.*, Plaintiffs-Appellees, *v.* MASSAC COMMUNITY UNIT DISTRICT NO. 1 OF MASSAC COUNTY, Defendant-Appellant.

Fifth District    No. 80-360

Opinion filed May 18, 1981.

Larh & Sibley, of Metropolis, for appellant.

Richard Kruger, of Metropolis, for appellees.

Mr. JUSTICE WELCH delivered the opinion of the court:

In this proceeding to detach land from one school district and annex it to another, two decisions were rendered by regional boards involved, and both decisions were reviewed by the Circuit Court of Massac County. Each circuit court action presents a different question to be resolved by this court. In its first order, the trial court remanded the proceedings to the board. The appellant claims that this procedure was unwarranted in this case. In the second order, the trial court affirmed the second decision of the board. We affirm both orders.

The territory in this dispute consists of eight full sections and two partial sections of land in western Massac County. It is situated east of the Village of Joppa, population 500, and west of Metropolis, the county seat, population 7,000. The area is roughly bisected by U.S. Highway 45 and it is bounded on the south by the Ohio River. This region, like much of Massac County, is rural in character, and those of its residents who are not engaged in farming are employed by several industries in Joppa and Metropolis.

Traditionally, the children of this area attended Franklin Grade School, to the east, and continued their education at Joppa High School, in the village. The other Franklin children went on to Metropolis High School. The land in question has been part of the Joppa High School District since the first Joppa High School was built in 1927. In December 1976, a referendum was held to determine whether a "unit district" would be created in part of Massac County. A unit district encompasses all levels of elementary and secondary education, and its creation requires consolidation of various existing grade and high school districts into a single district. The referendum passed, and the Massac Community Unit District No. 1 was brought into existence. The unit district absorbed the old Franklin elementary district, and as a result, all students who attended Franklin Grade School were automatically assigned to Metropolis High School.

On December 1, 1978, a petition signed by better than 90% of the registered voters in this area was filed with the Regional Board of School Trustees for Massac and Johnson Counties. It requested that the territory be detached from the unit district and be annexed to the Maple Grove Elementary District and the Joppa High School District. Maple Grove, located north of the Village of Joppa, is the only grade school which sends its pupils on to Joppa High. The Maple Grove and Joppa High Districts are distinct administrative and taxing entities, and have not been "unified," as has the unit district.

Hearings were held on the petition in February and March of 1979. Several residents of the area, personnel from the schools involved, and some outside educational consultants testified before the regional board. On April 6, 1979, the board voted 4-3 to deny the petition, all four board members who were residents of the unit district voting in the majority. In its written order of that date, the board stated that the following factors were considered in the decision:

"A. The financial impact on all the districts involved.

B. The relative merits of the educational program [sic].

    (1) Curriculum

    (2) Library facilities

    (3) Racial environment

    (4) Social environment

C. Convenience and preference of parents and students living in the area sought to be detached.

D. Physical proximity to school districts [sic] of the area to be detached.

E. The educational welfare of the affected districts and their pupils as a whole.

F. School boundaries should be changed only where the benefit to

the annexing district and affected areas clearly outweighs the detriment resulting to the detaching district and surrounding community as a whole."

The regional board found that:

"(a) The decrease in funds available to Massac Unit #1 would be much larger than the corresponding increase of funds to Joppa Community High School Unit #21.

(b) It clearly is in the best interests of the schools involved to deny the Petition for Detachment.

(c) It is clearly in the best interest of the educational welfare of the students involved to deny the Petition for Detachment."

The petitioners sought judicial review of this decision in the Circuit Court of Massac County. (Ill. Rev. Stat. 1979, ch. 122, par. 7—7; ch. 110, par. 264 *et seq.*) After hearing argument from both sides, the court entered a written order on September 24, 1979. It was stated that the factors governing granting or denial of a detachment petition are listed in *Bowman v. County Board of School Trustees* (1974), 16 Ill. App. 3d 1082, 307 N.E.2d 419, and that the regional board in this case did not consider the following factors listed in *Bowman.*

"a. the identity of the petitioning territory with the district to which annexation is sought;

b. the likelihood of increased participation in school activities by the parents and children in the petitioning territory if detachment were granted."

The trial court remanded the case to the regional board to make new findings of fact without taking any additional evidence. In its reconsideration, the board was directed to find:

"a. That granting the detachment sought by petitioners will not result in a financial detriment to Unit One due to the fact that if detachment were granted Unit One would still have excess revenue over expenditures.

b. That granting the detachment sought by petitioners would result in a benefit to the Joppa Community High School District * * * and to the students [presently] attending school in said Joppa Community High School District * * *."

The appellant, the unit district, challenges the trial court's remandment order. It is argued that the court applied too rigid a standard when it termed the board's order insufficient for not making explicit reference to two *Bowman* factors. The unit district also urges that the court should not have directed the board to find that a deficit must exist in Unit One's finances before the detachment would result in a "detriment" to the district. Finally, the unit district contends that the trial court's reversal of the board's finding that the detachment would not benefit Joppa or its

present students is contrary to the evidence introduced at the hearings. We need not consider whether the regional board's omission of two *Bowman* factors vitiated its order, because the other reasons for the remandment support that procedure.

■■ It is first noted that, as the trial court's order remanding the case to the board was interlocutory in nature, the failure of the unit district to appeal from that order does not waive any of the issues presented by that order. The entirety of the proceedings in this case is properly before this court for review. *Colaw v. University Civil Service Merit Board* (1975), 37 Ill. App. 3d 857, 341 N.E.2d 719.

We turn now to that portion of the remandment order dealing with the financial detriment to Unit One. The Maple Grove and Joppa high school districts are among the wealthiest in this State. Because of the great assessed valuation in the Joppa and Maple Grove Districts, much of the revenue obtained by those districts comes from property taxes, and in 1978, both districts received the minimum State aid payment of $48 per pupil. The unit district, in contrast, is one of the poorest in the State, and, despite property tax levies at a minimum rate, it receives a great proportion of its revenue from State aid. In 1978, the unit district was given the maximum State aid payment of approximately $1,300 per pupil.

Although, as one expert witness testified, public school finance is an exceedingly complex subject, made more mysterious to the noneducator by the intricate interaction of block and categorical grants, as well as Federal and State aid, the basic effect of granting the petition may be demonstrated with several approximations. Based on 1978 attendance and aid figures, and the fact that 35 grade school students and 20 high school students would be involved in the transfer, Unit One would stand to lose $28,800 in State aid, or 1.2% of its 1978 State aid claim. Maple Grove would gain $2,500 and Joppa would gain $1,440, or 15.0% and 11.6% other their 1978 State aid payments, respectively.

When one considers the effect on property tax revenues, one must begin with the assessed valuation of the area proposed for detachment. The highest figure mentioned at the hearings was $980,000 and so that figure will be used. If that amount were to be added to Maple Grove's assessed valuation, its property tax revenue, at 1977 rates (collected in 1978) would increase by $12,500 or 2.13%. Joppa's revenue would expand by $16,400 or 2.16%. The unit district would lose $35,800 which would constitute 2.21% of its 1978 property tax "take."

To put these figures in proper perspective, it must be said that an additional 20 students at Joppa would enlarge its 107 member student body by 18.7%, that 35 more students at 224-student Maple Grove would be an increment of 15.6%, and that a loss of 55 students out of the 2530 in the unit district would reduce enrollment there by 2.2%. It is correct to say,

as the unit district argues, that the loss of property tax revenue to it exceeds the gain to Maple Grove and Joppa by $6,900, and that the loss of State aid to it exceeds the gain in State aid by $24,860. However, when one compares the figures gained and lost in property taxes and State aid to the number of pupils gained or lost by the districts, only one imbalance is apparent. Maple Grove and Joppa will receive an increase in property tax revenues which is much less than the proportional increase in enrollment at both schools.

The total loss to the unit district would amount to nearly $65,000. Yet, in mid 1978, the district had a cumulative surplus of revenue over expenditures of $1,260,000, when the surplus from the "site and construction" fund is excluded. Joppa showed a deficit during this period due to an increase in bonded indebtedness to pay for the construction of a new high school building.

With this skeletal outline of the finances of all districts concerned, the questions which face this court involve determining which figures should be used by a school board in ruling on a detachment petition and deciding whether the figures presented in this case better support the original ruling of the regional board or the remandment order of the Circuit Court of Massac County.

The Supreme Court of Illinois has stated that a detachment petition should be granted only if "the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole." (*Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 193-94, 145 N.E.2d 736, 737.) In order for a loss of finances to constitute a legally recognized "detriment" to the detaching district, that loss must result in a "serious depletion" in revenue. (*Oakdale; Locher v. County Board of School Trustees* (1975), 29 Ill. App. 3d 271, 330 N.E.2d 282; *Burgner v. County Board of School Trustees* (1965), 60 Ill. App. 2d 267, 208 N.E.2d 54; *Board of Education v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 407 N.E.2d 1084.) These phrases have become part of the Illinois jurisprudence on school detachment petitions, but a "serious depletion" has not been adequately defined in terms of tax rates, assessed valuation, State aid, pupils transferred, and budget surpluses or deficits.

The preliminary question which must be answered before it is determined whether a "serious depletion" will result from the detachment is whether the detaching district is levying the maximum legal property tax rates. Reported decisions have developed certain rules which apply when the maximum rate is not levied. (*Newman v. County Board of School Trustees* (1974), 19 Ill. App. 3d 584, 312 N.E.2d 35; *Wheeler v. County Board of School Trustees* (1965), 62 Ill. App. 2d 467; *Burgner*.)

The unit district is taxing its property owners at a maximum rate, and so these rules need not be considered in this case.

If the detaching district is making full use of its property taxes, then its entire financial system must be scrutinized to see if the detachment would produce a "serious depletion" in revenue. The reviewing courts should examine the following factors:

FIRST: The percentage that the lost tax revenue and State aid payments would constitute in the detaching district's most recent receipts. (*School District No. 106 v. County Board of School Trustees* (1964), 48 Ill. App. 2d 158, 198 N.E.2d 164; *Sesser Community Unit District No. 196 v. County Board of School Trustees* (1966), 74 Ill. App. 2d 152, 219 N.E.2d 364; *Fromm v. Will County Board of School Trustees* (1976), 41 Ill. App. 3d 1045, 355 N.E.2d 172.) This comparison is a more accurate index of the effect on the detaching district, and is thus to be preferred to a comparison of the assessed valuation in the petitioning territory to the assessed valuation of the entire detaching district, as has been used in some cases. (*Jonesboro*; *Board of Education of Avoca School District No. 37 v. Regional Board of School Trustees* (1980), 82 Ill. App. 3d 1067, 403 N.E.2d 578; *Bowman*; *Locher*.)

SECOND: The latest annual and cumulative surplus or deficit in the budget of the detaching district. (*Fromm*; *Avoca*).

THIRD: The excess (if any) of the loss to the detaching district in State aid and property tax revenue over the gain to the annexing district in State aid and property tax revenue. This dollar amount is obtained by subtracting the gain from the loss.

By listing these factors, we do not mean to indicate that a school board's order is invalid if it does not make explicit findings pertaining to these three categories. However, the reviewing courts should use these figures if they are in the record, and need not examine other statistics. Whether a specific set of figures would establish a "serious depletion" in the revenue to the detaching district must be carved out by existing and future case law.

Upon analysis of the school board's order and the trial court's remandment order, it is apparent that, although sufficient financial information is present in the record, neither order considered more than one of the factors enumerated above. However, the relevant financial data show that the trial court was correct in directing that the board find that no serious detriment existed, for the board's contrary finding was not supported by the evidence.

In 1978 figures, Unit One received $1,623,194.49 in property tax revenues and $2,331,445 in State aid payments, or a total of $3,954,639.49. It could stand to lose $35,794.50 in property taxes and $28,767.00 in State

aid by virtue of the detachment. The total lost revenue, $64,561.50, would constitute approximately 1.63% of Unit One's 1978 property tax and State aid receipts. As losses of 1% (*Sesser*), 2.5% (*School District No. 106*), and 2.4% (*Avoca*), though in some cases measured as a loss of assessed valuation, have been held to cause no serious detriment to the detaching district, we find that this figure indicates no detriment to Unit One.

In the second factor, too, the unit district would not suffer by the detachment. As of June 30, 1978, the unit had a cumulative surplus of $1¼ million, and in the fiscal year ending on that date, the unit district took in $600,000 more than expenditures. It must be admitted that the third factor indicates that the unit district would lose $31,700 more than Maple Grove and Joppa would gain as a result of the detachment. But, when all figures are examined together, the unit district cannot be said to suffer any serious, legally cognizable detriment were the detachment to be granted.

Although we believe that the trial court properly remanded the petition for new findings of fact, based only upon our analysis of the "serious detriment" to Unit One, we now proceed to consider the trial court's finding concerning the benefit to Joppa High School and the students presently attending school there. The regional board stated that it was in the best interests of all schools involved, including Joppa High, to deny the petition. The trial court deemed this finding erroneous and directed that the regional board find, on remand, that the detachment would benefit Joppa. A review of the relevant evidence demonstrates that the trial court was also correct on this issue.

As of the date of the hearings on the petition, Joppa High enrolled 107 students. The student body in the four-year institution has been as large as approximately 125 only two or three years earlier. One of the issues which was contested at the hearings was whether Joppa was large enough to provide a varied curriculum for its students. However, all witnesses who expressed an opinion on this issue agreed that the additional 20 students which Joppa would gain in the detachment would be an important element in the maintenance of its present program in the face of generally declining enrollments. As the North Central Association noted of Joppa in its 1978 accreditation report,

> "Approximately six square miles of the district has [*sic*] recently been annexed by a neighboring district cutting into the already limited student population base. * * * The district should attempt to retain as many of its students as possible in order to have a population base large enough to offer a comprehensive curriculum."

Although it may be overstated to say that the continued survival of Joppa High School depends on the granting of the petition, the uncontradicted evidence shows that the diversity of the present curriculum would be further insured by the additional students.

Moreover, the petitioning territory contains the predominantly black community of Choat. Joppa High drew a large proportion of its black students from this area. Without this territory as part of its district, Joppa's student body would include only three or four black students. If the petition were granted, the minority population at Joppa could be doubled, increasing the minority enrollment rate to greater than 5% of the student body. Unchallenged testimony indicates that the additional black students at Joppa would encourage further involvement of the current minority students in the affairs of Joppa High by making them feel less a part of a small, isolated community, and more a part of the entire high school community.

No evidence was presented to show that Joppa High could not accommodate the new students or that they would cause any sort of difficulty for the school. All information points to the contrary. The trial court properly remanded the cause, directing that the regional board find that Joppa and its students would benefit from the detachment. The trial court's remandment order was thus justified because the board's findings on the detriment to the unit district and the gain to Joppa were against the manifest weight of the evidence. We need not decide whether the order was correct in requiring the board to make more specific findings on the identity of the petitioning territory and on the participation of the children and parents in various school activities.

Following the trial court's order of September 1979, the petition again came before the Regional Board of School Trustees, which, by then, had expanded to include Alexander, Pulaski, and Union Counties, in addition to Massac and Johnson Counties. The newly constituted regional board met on November 14, 1979, and, without hearing additional evidence, voted 5-2 to grant the petition. A written order was entered, and, in addition to the two findings of fact directed by the court, the following findings of fact were made:

"A. * * * that it is in the best interests of the educational welfare of the children in the territory for which detachment is sought to grant the petition for detachment.

[Findings B. and C. were those directed by the court.]

D. The decrease in funds available to Massac Unit 1 would be much larger than the corresponding increase of funds to Joppa Community High School District 21 and Maple Grove Elementary School District No. 17.

E. That granting the detachment sought by the petitioners would result in a greater benefit to the annexing districts than the resulting detriment to the detaching district and surrounding community as a whole.

F. It clearly is in the best interests of the schools involved to grant the Petition for Detachment."

Unit One appealed this decision to the Circuit Court of Massac County. Upon hearing arguments of counsel on June 5, 1980, the court affirmed the granting of the petition, and stated that the findings of the regional board were not against the manifest weight of the evidence introduced at the hearings. In this court, Unit One has basically argued that the trial court should not have remanded the case to the board, and that the board's first decision was not against the manifest weight of the evidence. It is not specifically argued here that the Board's second decision was contrary to that evidence. Nonetheless, we have reviewed the hearing testimony on our own initiative, and conclude that it supports the regional board's granting of the petition.

Assuming that Franklin and Maple Grove Elementary Schools are approximately equivalent, we believe that the differences between Joppa and Metropolis High Schools point to the granting of the petition. Among the advantages offered by Joppa High are a student:teacher ratio of 7:1, a much newer school building, faculty who have been at Joppa for quite some time, many of whom have master's degrees, and free lunches, physical education and other uniforms, as well as band instruments for all students. Joppa is considerably closer to the detaching area than is Metropolis, student participation in extracurricular activities is high and parental ties to Joppa are strong, as is indicated by the fact that 90% of the registered voters in the territory signed the petition. It cannot be doubted that Metropolis High School offers several more courses and some more activities than does Joppa, but this consideration does not outweigh the many commendable aspects of Joppa High School. In this case "the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole." *Bowman v. County Board of School Trustees* (1974), 16 Ill. App. 3d 1077, 1085, 307 N.E.2d 419, 421.

■■ In conclusion, we have held that the trial court's remandment order was correct because the board's original findings pertaining to the financial detriment to Unit One and the gain to Joppa High were against the manifest weight of the evidence. We have also considered all testimony presented at the hearings before the board and we note that the decision to grant the petition was not contrary to that evidence. As a result, all orders of the Circuit Court of Massac County are affirmed, as is the granting of the petition for detachment.

Affirmed.

KASSERMAN, P. J., and KARNS, J., concur.